Romey Luther MILES *v.* STATE of Arkansas

CR 00-635 75 S.W.3d 677

Supreme Court of Arkansas
Opinion delivered May 9, 2002

*Edgar R. Thompson*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

A NNABELLE CLINTON IMBER, Justice. The appellant, Romey Luther Miles, was convicted by a jury of aggravated robbery and kidnapping. He was sentenced as a habitual offender to life imprisonment for aggravated robbery and 480 months for kidnapping, with the sentences to run consecutively. On appeal, Mr. Miles contends that the trial court erred in (1) denying his motion to dismiss on speedy-trial grounds, (2) ruling that he had waived his *Miranda* rights, and (3) excluding the proferred testimony of a witness on grounds that the testimony was irrelevant. Our jurisdiction is proper pursuant to Ark. Sup. Ct. R. 1-2(a)(2). We find no error, and thus affirm.

The charges filed against Mr. Miles were the result of a robbery at the Cobb Cotton Gin in Keo on September 3, 1997. On that date, Samuel Cobb, Kenneth Cole, and Don Compton were present in the office of the gin when three black men armed with pistols entered the office. The robbers struck two of the men, threatened to kill all three of the men, and repeatedly told the victims not to look at them. The assailants restrained the men with duct tape and took their wallets and watches. One of the victims had approximately $700.00 in his wallet. In addition, approximately $700.00 was stolen from the vault in the gin. During the robbery, another man arrived at the gin to repair an air conditioning unit. He was likewise threatened and bound. All the victims were left alive, and, after the robbers left the scene, Mr. Compton managed to get free and call police.

An informant told police that a subject named Romey had committed the robbery. Mr. Cobb and Mr. Cole identified Mr. Miles from a photo line-up. They testified that the robbers were not wearing face coverings when they initially entered the gin's office and that they saw Mr. Miles' face before he covered it with a net mask. The victims also testified that one of the assailants was about forty years of age, around 6' 2" or 6' 3" in height, and weighed about 250 pounds; whereas, the other two robbers were younger and smaller. The evidence showed that Mr. Miles was

almost forty years old, 6' 4" in height, and weighed 260-270 pounds.

An arrest warrant was issued, and Mr. Miles turned himself in to the Prairie County Sheriff's office on October 4, 1997. Later that day, Lieutenant Franklin Darrell Sturdivant and Detective John Andolina from the Lonoke County Sheriff's Office took Mr. Miles into their custody. He was arrested, handcuffed, and transported to the Lonoke County Jail. After Lt. Sturdivant verbally advised him of his *Miranda* rights in the patrol car, Mr. Miles indicated he did not want to make a statement at that time. By Lt. Sturdivant's account, he stopped the police car only one time during the trip back to Lonoke at a store in Hickory Plains so that Det. Andolina could retrieve his vehicle. He stated that Mr. Miles did not get out of the car at Hickory Plains. Once they arrived in Lonoke, Lt. Sturdivant read a rights form to Mr. Miles, and then he signed the form. According to the officer, the only statement Mr. Miles made at that time was that Tremell Hood and Carlton Berry were not involved. He admitted that one family member was involved and promised to divulge that name after he spoke to the prosecutor.

On the following Tuesday, October 7, 1997, Mr. Miles indicated to police that he wanted to make a statement. Lt. Sturdivant administered another rights form to Mr. Miles, upon which Mr. Miles initialed each of the statements and signed his name. Lt. Sturdivant testified that Mr. Miles did not ask for an attorney and never attempted to stop the questioning. Only Lt. Sturdivant and Mr. Miles were present during the statement. Mr. Miles was handcuffed and sitting across the table from the lieutenant. Lt. Sturdivant further testified that he did not coerce Mr. Miles or use physical force. During the statement, Mr. Miles admitted to his involvement in the Keo robbery.

According to Mr. Miles's testimony at trial, Lt. Sturdivant and Det. Andolina had a "bad attitude" when they picked him up on October 4. He testified:

> they stopped between Des Arc and Hickory Plains and they asked me about the robbery and I told them I didn't know nothing about the robbery so they got mad and pulled over on the side of

the road, snatched me out the back of the car, handcuffed, and kicked me and whatever and then along come a car was coming by so they slowed down and they seen it was—something was going on. So one of them snatched me by the thumb, snatched me up by the thumb . . . then they throwed me in the car.

Mr. Miles also claimed that the officers read him his rights, but then told him they were not going to give him a lawyer and they would beat him up again if he did not give a statement. He went on to testify that the confession statement which he gave to police three days after the alleged beating was not true and correct, and he indicated that he only gave the statement out of fear. In addition, he testified that he requested and received medical attention for an injury to his thumb while in jail.

Henry Patterson testified that Mr. Miles arrived at his home in Tucker around 2:00 p.m. on the day of the Keo gin robbery. Two other men who appeared to be about seventeen to twenty years old were with Mr. Miles. According to Mr. Patterson, a friend's nephew informed the group that the police were looking for three men driving a black car who had committed a robbery. At that point, Mr. Miles asked Mr. Patterson if he could get to Pine Bluff on back roads, and the three men left. Mr. Patterson stated that Mr. Miles had a white hair net in his possession at the time.

Clayburn Harris was also at Mr. Patterson's home on the day of the robbery. He testified that one of the young men with Mr. Miles gave him a black .380 semi-automatic gun and further stated that the gun was wrapped in a white "Tyson" hair net. Mr. Harris told police that he sold the gun to Gregory Evans. Officer Eugene Butler with the Jefferson County Sheriff's Department later recovered the gun from Mr. Evans.

## I. Speedy Trial

For his first point on appeal, Mr. Miles contends that the trial court erred in denying his motion to dismiss. On January 11, 1999, Mr. Miles filed a motion to dismiss the charges against him on speedy-trial grounds. He admits that a docket entry made by the court on March 9, 1998, charges the time from March 19,

1998, through April 9, 1998, to the defendant. However, he contends that there is nothing in the record to charge any time to either him or to the State except for the twenty-two days from March 19 through April 9. Mr. Miles acknowledges that the trial court excluded some "good cause time" for the State, but he argues that the court's explanation was not adequate.

 Arkansas Rules of Criminal Procedure 28.1 and 28.2(a) (2001) require the State to try a defendant within twelve months, excluding any periods of delay authorized by Arkansas Rule of Criminal Procedure 28.3 (2001). *Huddleston v. State*, 339 Ark. 266, 5 S.W.3d 46 (1999). The twelve-month period for bringing an accused to trial begins to run on the date the information is filed, or the date of arrest, whichever occurs first. *Jackson v. State*, 334 Ark. 406, 976 S.W.2d 370 (1998). *See* Ark. R. Crim. P. 28.2(a)(2001). The record in this case indicates that Mr. Miles was arrested on October 4, 1997. The original information was filed on October 20, 1997. Thus, the time for bringing Mr. Miles to trial began to run on October 4, 1997. Mr. Miles' jury trial began 474 days later on January 21, 1999. Once it is shown that a trial was held after the speedy-trial period set out in Rule 28.1 has expired, the State has the burden of showing that any delay was the result of the defendant's conduct or was otherwise legally justified. *Huddleston v. State*, 339 Ark. 266, 5 S.W.3d 46 (1999); *McConaughy v. State*, 301 Ark. 446, 784 S.W.2d 768 (1990). Here, the State has the burden of showing that at least 109 days may be properly excluded in order for Mr. Miles to have been timely brought to trial.

Arkansas Rule of Criminal Procedure 28.3 provides which specific time periods shall be excluded in computing the time for trial. Such excludable periods must be set forth by the court in a written order or docket entry,[1] but it shall not be necessary for the

---

[1] Mr. Miles argues that the motion to dismiss should be decided by this court as the docket existed on the date the trial court considered the matter, and points out that a copy of the docket as it existed on that date is attached to his original motion in the record. No authority is cited to support this argument. In any event, compliance with such a request would not change the outcome of the case.

court to make the determination until the defendant has moved to enforce his right to a speedy trial. Ark. R. Crim. P. 28.3 (2001).

▪ The only case cited by Mr. Miles under his speedy-trial argument is *Hicks v. State*, 305 Ark. 393, 808 S.W.2d 348 (1991). Mr. Miles argues that, in both *Hicks* and the instant case, "the motion was made prior to trial and no order was entered showing the circumstances of any continuance." The *Hicks* case, however, is inapposite. In that case, a crowded trial docket caused the continuance. Delays attributable to congested court dockets are dealt with specifically in Ark. R. Crim. P. 28.3(b).[2] There is no suggestion that any period of delay in this case was due to a congested trial docket.

▪ As discussed above, the first period of time excludable for speedy-trial purposes is the period of delay resulting from a continuance granted at the defendant's request. The period of delay resulting from a continuance granted at the request of the defendant or his counsel is excluded in computing the time for speedy trial. Ark. R. Crim. P. 28.3(c) (2001). The excludable time runs from the date the continuance is granted until a subsequent date contained in the order or docket entry granting the continuance. Ark. R. Crim. P. 28.3(c). In this case, the docket entry reflects that a continuance was granted at the request of the defendant on March 9, 1998. The entry specifically states that the motion is granted and that "time from 3-19-98, through 4-9-98, [is] charged against the defendant." Mr. Miles acknowledges that the twenty-two days from March 19 through April 9 are properly charged against him. The trial court, in making its calculation of time for speedy-trial purposes, counted only those twenty-two days as specified in the docket. However, the State alleges that the time charged against Mr. Miles began to accumulate on March 9, the date the continuance was granted. Under Rule 28.3(c), the State is correct, and the time charged against Mr. Miles should run

---

[2] Rule 28.3(b) requires the trial court to make certain findings in a written order or docket entry at the time the continuance is granted. The trial court must explain with particularity the reasons the trial docket does not permit trial on the date originally scheduled. Ark. R. Crim. P. 28.3(b)(1). The trial court must also determine that the delay will not prejudice the defendant, and it must schedule the trial on the next available date permitted by the trial docket. Ark. R. Crim. P. 28.3(b)(2)–(b)(3).

from March 9, the date the continuance was granted, until April 9, the subsequent date specified in the docket entry. The excludable period thus totals thirty days rather than twenty-two days as the trial court ruled. This exclusion leaves seventy-nine days which must still be properly excludable in order for this court to affirm the trial court's denial of Mr. Miles' motion to dismiss on speedy-trial grounds.

On March 27, 1998, the State moved for a continuance on the basis that the State Crime Laboratory had not completed testing on hair samples taken from Mr. Miles and a co-defendant. The motion asserted that the evidence was material and that the State exercised due diligence in obtaining the hair samples and test results.[3] Pursuant to Ark. R. Crim. P. 28.3(d)(1) (2001), a continuance granted at the request of the prosecuting attorney shall be excluded in computing the time for trial where the continuance is granted because of the unavailability of evidence material to the State's case when due diligence has been exercised to obtain such evidence and there are reasonable grounds to believe it will be available at a later date. Ark. R. Crim. P. 28.3(d)(1). At the time the State filed its motion for continuance on March 27, 1998, the docket sheet reflects that trial was set for April 9, 1998. The court subsequently entered an order for continuance on June 15, 1998, and made the order effective "nunc pro tunc." The order states as follows:

> On the 27th day of March, 1998, this matter comes to be heard and the same is presented upon the Motion for Continuance for the Plaintiff, State of Arkansas, and from the matters and representations to the Court, the Court finds that the Motion should be granted. It is so ordered.

A *nunc pro tunc* order may be entered to make the court's record speak the truth or to show that which actually occurred. *Hansberry v. State*, 318 Ark. 326, 885 S.W.2d 296 (1994). Based upon the trial court's entry of the order nunc pro tunc, that is "now for then," it is clear that the State's motion for continuance was effectively granted on March 27, 1998.

---

[3] On appeal, Mr. Miles does not challenge the State's assertion in the motion that it exercised due diligence.

The State argues that the period from March 27 through June 15 should be excluded from the speedy-trial calculation because of the overlap between the continuance granted to Mr. Miles and the continuance granted to the State. The trial court agreed that the time from March 27 to June 15 was excludable. Under Rule 28.3(d)(1), the period of excludable delay is to be calculated from the date the continuance is granted until the subsequent date contained in the order or docket entry granting the continuance. Ark. R. Crim. P. 28.3(d)(1) (2001). In this case, neither the order granting the State's continuance nor any docket entry specifically contains a subsequent trial setting. However, this court has previously held that we will uphold excluded periods without a written order or docket entry when the record clearly demonstrates that the delays were attributable to the accused or legally justified and where the reasons were memorialized in the proceedings at the time of the occurrence. *Chenowith v. State*, 341 Ark. 722, 19 S.W.3d 612 (2000) (citing *Goston v. State*, 326 Ark. 106, 930 S.W.2d 332 (1996)); *Osborn v. State*, 340 Ark. 444, 11 S.W.3d 528 (2000). Here, the State's March 27 motion requested that the court continue the trial scheduled at that time for April 9, 1998, and reset a new trial date at the court's convenience. Then, at a pretrial hearing on June 8, 1998, the following colloquy occurred:

> COURT: What about trial settings? It looks like there was a motion for a continuance. So we have a trial setting?
>
> PROSECUTOR: No, sir, I don't believe we do.
>
> DEFENSE: Your Honor, I don't believe it was set. I believe it was set and I think there was a joint motion for continuance at that time, which the court granted, and I don't believe it was reset. So I would ask for it to be reset at this time.
>
> . . . .
>
> COURT: Then we have a trial setting on September the 17th, 9:00 o'clock in the morning.

This colloquy indicates that, as a result of the State's motion for continuance, the court set a new trial date of September 17, 1998. The State's motion for continuance was made under Ark. R. Crim. P. 28.3(d)(1) such that the additional time resulting from

the continuance is legally justified and should be excluded in computing the time for trial. Thus, we hold that the period of time from March 27 through September 17 should have been excluded in accordance with Ark. R. Crim. P. 28.3(d)(1). As thirteen of those days have already been properly charged to the defendant, the 160 days from April 10 through September 17 should have been properly excluded in counting the time for speedy-trial purposes. The proper exclusion of 190 days means that Mr. Miles was tried well within the allotted twelve-month time period. As a result, it is not necessary for us to further discuss any other potentially excludable time periods.

## II. Waiver of Miranda Rights

For his second point on appeal, Mr. Miles argues that he never waived his rights under *Miranda*. Mr. Miles acknowledges that he was offered several "Statement of Rights" forms which "very carefully recite[d] each of a number of rights and describe[d] to the defendant what those rights are." He admits that he initialed each one of the rights and signed his name to the forms. The forms advised him of his rights, including the right to remain silent and the right to have an attorney present. Mr. Miles nonetheless argues that knowing what a right is does not equate to a waiver of that right, and, thus, he did not knowingly and intelligently waive any of those rights. Confessions made in police custody are presumed involuntary and the burden is on the State to prove such confessions were voluntary and that any waiver of *Miranda* rights was knowingly and intelligently made. *Diemer v. State*, 340 Ark. 223, 9 S.W.3d 490 (2000); *Riggs v. State*, 339 Ark. 111, 3 S.W.3d 305 (1999). This proof must be by a preponderance of the evidence. *Id*.

Lt. Sturdivant testified that he approached Mr. Miles on October 7, 1997, to inform him that someone from the prosecutor's office was going to make an effort to speak with him. According to Lt. Sturdivant, Mr. Miles then began making a statement to him without anyone from the prosecutor's office present. Lt. Sturdivant stopped Mr. Miles and again read him a Statement of Rights form. Mr. Miles initialed each statement on the form, signed the form, and then proceeded to give a recorded statement

to Lt. Sturdivant. The last sentence of the form signed by Mr. Miles read: "[Y]ou may waive the right to advice of counsel and your right to remain silent, and you may answer questions or make a statement without consulting a lawyer if you so desire." The response to that statement is "yes," and is initialed "RM." The trial court ruled that Mr. Miles' written response of "yes" and his initials beside the last sentence on the form constituted a waiver of his rights.

 Mr. Miles seems to argue that an accused can only waive his rights by expressly doing so in writing. However, Mr. Miles offers no authority to support such a proposition, and we know of none. In fact, this court has expressly held that a form containing an express waiver provision is not a prerequisite to a finding of a knowing and intelligent waiver. *Rankin v. State*, 338 Ark. 723, 1 S.W.3d 14 (1999) (citing *Humphrey v. State*, 327 Ark. 753, 940 S.W.2d 860 (1997)). An accused may impliedly waive his right to remain silent merely by answering questions. *Bangs v. State*, 338 Ark. 515, 998 S.W.2d 738 (1999). In this case, Mr. Miles indicated that he wanted to make a statement, Lt. Sturdivant read him his *Miranda* rights, he signed a statement-of-rights form, and he proceeded to make a statement. It is undisputed that Mr. Miles was informed of his rights and that he understood them. We cannot say the trial court was clearly erroneous in ruling that Mr. Miles knowingly and intelligently waived his *Miranda* rights.

### III. Proffered Testimony of Witness

Finally, Mr. Miles argues that he should have been allowed to call a witness to corroborate his assertion that he was beaten by Lt. Sturdivant and Det. Andolina on the side of the road between Des Arc and Lonoke. Irma Brodis was to testify that she had seen a police car stopped along the road between Des Arc and Lonoke with a black man in the back. The trial court refused to allow the testimony, ruling that it was irrelevant because Ms. Brodis could not testify that the man she saw was Mr. Miles. Mr. Miles proffered the testimony of Ms. Brodis. .

In the proffer, Ms. Brodis stated that she and her sister were driving on the highway between Des Arc and Cabot when they

saw a police car stopped on the side of the road. They saw a black man in the back seat of the car and two officers standing on the side of the road. Ms. Brodis could not identify the officers, and she testified that she did not see any contact between the man in custody and the officers. In addition, she did not know the day on which she saw the car, though she knew it was in 1997. She stated that the man in the back seat of the car looked like Mr. Miles, but admitted that she was driving by at fifty-five miles per hour and could not positively identify the man in the back of the car.

 Mr. Miles contends on appeal that Ms. Brodis's testimony should have been allowed as it was relevant to corroborate his claim that the officers beat him along the side of the road. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ark. R. Evid. 401 (2001). A trial court's ruling on relevancy is entitled to great weight and will not be reversed absent an abuse of discretion. *Webb v. State*, 327 Ark. 51, 938 S.W.2d 806 (1997).

 This court cannot say the trial court abused its discretion in ruling that the testimony of Ms. Brodis was irrelevant and inadmissible. Ms. Brodis did not know the date on which she saw the police car, she could not identify the officers she saw, and she could not positively identify the man in the back of the car as Mr. Miles. In addition, Ms. Brodis could not testify to seeing any contact between the officers and Mr. Miles. Thus, we affirm the trial court's ruling.

### III. Arkansas Supreme Court Rule 4-3(h)

The transcript of the record in this case has been reviewed in accordance with our Rule 4-3(h) which requires, in cases in which there is a sentence to life imprisonment or death, that we review all prejudicial errors in accordance with Ark. Code Ann. § 16-91-113(a). None have been found.

Affirmed.