Jason Nugene TURNER *v.* STATE of Arkansas

CR 01–761 80 S.W.3d 382

Supreme Court of Arkansas
Opinion delivered July 5, 2002

[Petition for rehearing denied September 5, 2002.*]

* IMBER, J., not participating.

*Henry & Cullen, L.L.P.,* by: *Mark Murphy Henry,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Clayton K. Hodges,* Ass't Att'y Gen., for appellee.

Jim Hannah, Justice. Appellant Jason Nugene Turner appeals his convictions for capital murder and aggravated robbery from Calhoun County Circuit Court in connection with the death of Henry Lee Tatum. Following the convictions, the

court, upon agreement of the parties, imposed a sentence of life without parole for capital murder and ten years for aggravated robbery. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(2). On appeal, Turner asserts he was denied his right to a speedy trial, that his counsel was ineffective, and that there was insufficient evidence to support the convictions. He contends that the trial court erred in denying his motion for a directed verdict. We find no error and affirm.

*Facts*

On August 7, 1999, Henry Lee Tatum died from a single gunshot wound to the upper-right chest. According to the testimony of Naomi Lee Hall, Tatum came into Sambo's Liquor Store in Hampton that Saturday night as he generally did to help them load the walk-in cooler. Hall further testified that at about 9:25 p.m., Tatum was seated in a chair in the storage room, and she was in the back room when she heard an argument. Hall testified that this caused her to go back to the storage room, where she saw an intruder with a silver pistol. According to Hall, the intruder stuck his hands through some shelves and shot Tatum, then came around to Tatum and demanded that Tatum "open the safe." Hall further testified that Tatum got up and began to walk to the register when he grabbed his right side and fell to the floor. Hall also testified that the intruder did not leave, but rather he went into the storage room. When she last saw him, he was pointing his gun at the bathroom doorknob. Hall left the building and called police. Tatum was later pronounced dead at the scene.

According to Hall's testimony, the intruder was wearing tennis shoes, 'cargo pants, blue jean type,' a denim shirt, and had a stocking over the upper half of his face. Deloris Ann Thompson, who also worked at Sambo's Liquor, testified, "I saw a black guy with short blue jeans on, no shirt, a black do-rag over his head and a gun." Thompson also testified that the do-rag covered the intruder's whole face and that the pistol was silver. Latisha Tatum testified that she knew Turner, that they had "practically" grown up together, and that on the day Tatum was killed she saw Turner in Hampton wearing short blue jeans, a white t-shirt, and a black do-rag. Veronica Thomas testified she had known Turner "mostly

all my life," and that she saw him that day at her house at about 4:00 p.m. wearing a white tank top, a do-rag, and light blue denim shorts.

Initially, Hall identified another person as the intruder, but later indicated she was not sure. Turner was then identified. According to the testimony of Bernard Moore, Turner was present at his house the evening of August 7, 1999, playing dominoes. Moore lives about 100 yards from Sambo's Liquor. Moore testified that Turner arrived about 7:00 p.m., and that later that evening, Turner left and was gone for about forty-five minutes. Moore further testified that upon his return, he was sweating as if he had been running. Moore also testified that Turner was wearing dark blue or black shorts and a blue bandana on his head. Further, according to Moore, Turner had on a white shirt when he left, but had no shirt on when he returned. Moore finally testified that when Turner got up from his seat after returning, he heard something fall, and saw that a gun clip had apparently fallen from Turner's pocket.

Chris Williams testified that he was present at the dominoes game and that Turner left for a time at about 9:30 p.m. Kenneth Stephens testified that on August 7, 1999, he was catering a party at Canes Park and saw Turner there about 6:30 p.m. He testified that Turner was drunk and was looking for Henry Lee Tatum. Kenneth further testified that he heard shots fired at the party after Turner arrived. Kenneth's son, Clifford Stephens, testified that he saw Turner fire the shots and that he was shooting a silver gun in the air. Kenneth Stephens also testified that Turner came back to the party about 11:00 p.m., and that he gave Turner a ride home about 2:00 a.m. Kenneth testified that during the trip, he notice blood on Turner's clothing and asked Turner what it was, and that Turner replied it was Tatum's blood. Kenneth also testified that Turner told him Tatum had been shot that night and that while giving Turner a ride home, Turner fell asleep and a pistol slipped out of his pocket. Kenneth identified the pistol in court as the pistol he saw that night.

Angie Thomas, Turner's girlfriend, testified at trial that the pistol was hers. She further testified that in the early morning of

August 8th, Turner arrived at their house before she did, and that Kenneth Stephens came by where she and her cousins were and told them Tatum had been killed. She then testified that she went home and asked Turner who killed Tatum, and he said, "I did." She testified she then asked him with what he had killed Tatum, and Turner told her he had used her gun. She also testified that she saw Turner's white shirt and saw red spots on it.

Although projectiles and shell casings were obtained, no match to Thomas's gun were made. Rick McKelvey, of the Arkansas State Police, testified that in his interview with Turner, Turner admitted being the one that went into the liquor store. Turner's statement provides in pertinent part:

> I did it I'm sorry. I didn't intend to shoot nobody. . .I was the only one who went to the liquor store. I had on stonewash shorts. I didn't have no shirt. I had a nylon do–rag type stocking over my face. . .Henry Lee was sitting there and I asked him to open the register. I was holding the gun on him and turned to look at the back where I heard a noise, the gun just went off. I didn't mean to shoot nobody.

This statement was read by Officer McKelvey without objection. Turner objected to admission of the statement because it was not written by Turner, but the objection was overruled. Turner does not argue that the statement was received into evidence in error.

### Speedy Trial

We first address Turner's speedy-trial argument. The State initially argues that this issue is precluded on a procedural basis because Turner failed to object at the July 17 hearing when the court excluded the time from July 17 to November 1 for purposes of calculation of twelve months from the date of arrest. We note that there is no transcript of the hearing. We also note that we have nothing to rely upon but representations of the State. The State is thus arguing matters outside the record. This court does not take notice of gratuitous assertions based on matters not in the record. *Huls v. State*, 301 Ark. 572, 785 S.W.2d 467 (1990).

We therefore proceed to analyze the speedy trial issue. Under Ark. R. Crim. P. 28.1, an accused must be brought

to trial within twelve months unless a necessary delay occurs as authorized in Ark. R. Crim. P. 28.3. *Gwin v. State*, 340 Ark. 302, 9 S.W.3d 501 (2000). This means the accused must be tried within twelve months of the day the charges were filed, except that if prior to that time the defendant has been continuously held in custody, or has been lawfully at liberty, the time for trial commences running from the date of arrest. Ark. R. Crim. P. 28.2. Once a defendant shows his trial took place outside the applicable speedy-trial period, the State bears the burden of showing that the delay was the result of the defendant's conduct or otherwise justified. *Ferguson v. State*, 343 Ark. 159, 33 S.W.3d 115 (2000); *Gooden v. State*, 295 Ark. 385, 749 S.W.2d 657 (1988). If a defendant is not brought to trial within the requisite time, Ark. R. Crim. P. 30.1 provides that the defendant will be discharged, and such discharge is an absolute bar to prosecution of the same offense and any other offense required to be joined with that speedy-trial violation. *Ferguson, supra.*

Turner was arrested on August 19, 1999. His trial commenced on March 27, 2001. This was 586 days after his arrest. Turner thus made a *prima facie* showing of a speedy-trial violation, and the State was then left to show that at least 220 days were excludable. *Id.*

There are three periods of exclusion attributed to Turner that we must consider. First, on December 20, 1999, Turner filed a number of pretrial motions. According to the court's docket, those motions were heard and the decisions were rendered on March 20, 2000. The excluded period contemplated by the rule begins at the time the pretrial motion is made and includes those periods of delay attributable to the defendant until the motion is heard by the court and not more than thirty days thereafter. *Gwin, supra.* The total days from December 20, 1999, until the decisions were rendered on March 20, 2000, is 91 days. The docket sheet reflects that the motions were heard on March 20, 2000, but does not set out the days to be excluded against speedy trial. A trial court should enter written orders or make docket notations specifying the reasons for the delays and the specific dates or number of days to be excluded. *Hubbard v. State*, 306 Ark. 153, 812 S.W.2d 107 (1991). There was no docket entry or

written order as required by the language of Ark. R. Crim. P. 28.3. However, a trial court's failure to comply with Ark. R. Crim. P. 28.3(i) does not result in automatic reversal. *Hubbard, supra.* As we stated in *Carmargo v. State,* 346 Ark. 118, 55 S.W.3d 255 (2001), this court has consistently held that where a case is delayed by the accused and that delaying act is memorialized by a record taken at the time it occurred, that record may be sufficient to satisfy the requirements of Rule 28.3. *See also, Kennedy v. State,* 297 Ark. 488, 763 S.W.2d 648 (1989).

No argument is made that any of the delay between December 20, 1999, and March 20, 2000, is attributable to the State. We therefore conclude that a total of 91 days may be excluded based upon hearings on pretrial motions under Rule 28.3.

Second, Turner moved to have his appointed counsel relieved so that he could retain private counsel. This motion was granted on November 14, 2000, and by that order, the court continued the case "until the defendant's retained counsel, the State of Arkansas and the Court can agree on a new trial date, and their shall be an excluded speedy trial period of time from this date until the new trial date is determined." The trial court's docket shows Turner appeared in court on November 20, 2000, and at that time still had not retained private counsel. The trial court noted in the docket that the trial would be reset for March 19, 2001, and that the period from November 20, 2000 through March 19, 2001, would be excluded for purposes of speedy trial. The period from November 14 to November 20 is not mentioned in the docket as excluded, but for the same reasons as stated above, this time is added because the record shows it was time granted to Turner to obtain counsel. The record reflects that on December 18, 2000, Turner again appeared in court and still did not have private counsel. At this time, Turner requested that counsel be appointed, and this was done. The date for trial remained March 19, 2002, and the time between November 14, 2000, until March 19, 2001, was properly excluded for purposes of calculating whether his right to a speedy trial had been violated. The period from November 14, 2000, to March 19, 2001, totals 126 days.

■ The total days excluded between hearings on pretrial motions and continuances is 217 days, or four days short of the amount needed to bring the days to trial down to twelve months. One additional period of exclusion is asserted, that of time consumed in obtaining a mental evaluation. That is an excludable period under Rule 28.3. The period of delay caused by a mental exam requested by a defendant is to be excluded from calculations on speedy trial. *Morgan v. State*, 333 Ark. 294, 971 S.W.2d 219 (1998). The trial court's docket shows that the order for the mental evaluation was entered on July 17, 2000. The trial court excluded the period from July 17 through November 1, 2000. Turner argues in his brief that this was in error because only sixty-four days were required. This calculation was based upon a statement on September 18, 2000, that the parties were ready for trial. The days between July 17 and September 18 amount to sixty-four. However, in his reply brief, Turner argues that this sum is incorrect because the mental evaluation was provided to the court by a transmittal letter dated July 31, 2000. It was not made part of the record at that time, but rather the record was supplemented to add the report following a motion to correct the record.

■ Turner argues that only the period from July 17 to July 31 may be counted. It is not clear this argument was considered by the trial court below. However, it is of no moment. Even if we were to agree with Turner, the mental evaluation still consumed more days than are required to bring his trial within twelve months. Only four days were needed to hold that the trial took place within twelve months, and the mental evaluation consumed fourteen days at the least. The trial court is affirmed on this issue.

### Sufficiency of the Evidence

Turner challenges the denial of his motion for a directed verdict. He asserts the jury was left to speculate as to who committed the murder given witness Hall's initial identification of one person as the murderer and then, upon a phone call from that person's brother, she changed and accused Turner.

■ It is well settled that a motion for a directed verdict is a challenge to the sufficiency of the evidence. *E.g., Smith v.*

*State*, 346 Ark. 48, 55 S.W.3d 251 (2001) (*citing Durham v. State*, 320 Ark. 689, 899 S.W.2d 470 (1995)). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Smith, supra.* Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* When a defendant challenges the sufficiency of the evidence convicting him, the evidence is viewed in the light most favorable to the State. *Id.; Atkinson v. State*, 347 Ark. 336, 64 S.W.3d 259 (2002).

The credibility of witnesses is an issue for the jury and not the court. *Phillips v. State*, 344 Ark. 453, 40 S.W.3d 778 (2001). The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* We will disturb the jury's determination only if the evidence did not meet the required standards, thereby leaving the jury to speculation and conjecture in reaching its verdict. *Id. See also, Atkinson, supra.*

In this case, Turner as much as admitted to Kenneth Stephens he was involved in the death of Tatum. He confessed to Angie Thomas that he was the killer. He admitted to Officer McKelvey and put in his statement that he was the killer. Further, the pistol seized from his girlfriend's house where he lived was consistent with the description witnesses gave of the weapon. It was also the same caliber. He admitted he was wearing shorts, no shirt, and a do-rag at the time of the killing. This was consistent with testimony of what the killer was wearing, and consistent with witnesses' testimony as to what they saw him wearing that day. According to Moore, Turner left his home about the time the murder was committed, a home that was only 100 yards from Sambo's Liquor Store. Again, according to Moore, Turner was sweating when he returned, seeming as if he had run. Blood was found on Turner's shirt.

The jury was properly allowed to consider the complained-of testimony of Hall and decide to believe or disbelieve her testimony. The jury was not left to speculation or conjecture. That Hall decided her initial identification was in error was sub-

stantiated by the sizable body of evidence noted above. There was more than sufficient evidence of Turner's guilt to compel a conclusion. We thus affirm the trial court's denial of the motion for a directed verdict.

### *Ineffective Assistance of Counsel*

 Turner alleges that his counsel's failure to "advance and preserve the speedy trial challenge is egregiously deficient in the context of acceptable criminal trial practices and procedures." This argument is made in the alternative to the initial argument that there is a speedy-trial violation. Turner cites the following colloquy from the very beginning of trial on March 27, 2001:

> BY MS. STREETT: We need to get on the record the ruling on the speedy-trial motion.

#### RULING BY THE COURT

> BY JUDGE CHANDLER: The court has carefully reviewed the record in this case as well as the pleadings. The Court is fully satisfied that the State is within the twelve month speedy trial limitations. The motion, which was filed *pro se* by the Defendant, will be denied.

Thus, it is obvious a ruling on the motion was given by the court. Turner's brief alludes to the argument of the State that there may have been a lack of a contemporaneous objection of some form, or that, in other words, there was some calculation of time in which the trial court was in error. But as with the State's procedural argument, no transcript is provided and none is found in the record. No argument is made that there was some evidence that should have been made a part of the record that was not. The trial court ruled, and Turner was free to challenge the trial court's calculation of the speedy-trial twelve-month period as he has done, and to which the State has raised no objection. There is no showing that counsel's representation fell below an objective standard of reasonableness and that but for counsel's errors the result of the trial would have been different. This is the required proof to receive relief. *Kemp v. State*, 347 Ark. 52, 60 S.W.2d 404 (2001). *See also, Strickland v. Washington*, 466 U.S. 668 (1984). There is no merit to this argument.

*Rule 4-3(h)*

The transcript of the record in this case has been reviewed pursuant to Ark. Sup. Ct. R. 4-3(h). Rule 4-3(h) requires, that in cases of sentences of life imprisonment or death, we review all prejudicial errors in accordance with Ark. Code Ann. § 16-91-113(a) (1987). None has been found.

Affirmed.

IMBER, J., not participating.