Patrick Levern ROMES *v.* STATE of Arkansas

CR 02-1026 144 S.W.3d 750

Supreme Court of Arkansas
Opinion delivered February 5, 2004

[Rehearing denied March 11, 2004.]

*Cullen & Co., P.L.L.C.*, by; *Tim Cullen*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brent P. Casper*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Patrick Levern Romes was convicted in the Pulaski County Circuit Court of capital murder and aggravated robbery and sentenced to concurrent terms of life imprisonment without parole and twenty

years' imprisonment. He raises three points for reversal: (1) there was insufficient evidence to convict him of capital murder; (2) the trial court erred in denying his motion to dismiss for lack of speedy trial; and (3) the trial court erred in denying his motion to suppress his custodial statement. Our jurisdiction of this appeal is pursuant to Ark. Sup. Ct. R. 1-2(a)(2). We find no error and affirm.

The record reflects that on the night of September 26, 2000, Dwain Brown and Art Caton were staying at the Sportsman's Inn in North Little Rock. Caton was in town waiting on a bus. When Brown got off work around 8:30 or 9:00 p.m., the two men spent the evening drinking beer and cognac in Brown's room. Around 1:00 or 2:00 a.m. the next morning, Caton left the room to get a soda from the machine at the front of the building. After he got the soda, he ran back to Brown's room and began beating on the door. When Brown opened the door, Caton ran inside and told Brown that somebody was behind him. A little while later, a knock came at the door, and Brown opened it and saw a man with a gun. The man said it was a "stick-up." Caton ran into the bathroom, and Brown gave the gunman the money he had in his pocket. The gunman then told Brown to tell his friend to come out of the bathroom, or he would shoot Brown. Brown did as he was told. When Caton came out, the two men started to get money out of Caton's room, which adjoined Brown's. While they were doing this, the gunman looked out the door, and Brown took the opportunity to push him out of the room. He then locked the door, and he and Caton went into the bathroom to hide.

At this point, according to Brown, Caton was screaming and going berserk. Brown attempted to calm him by reassuring him that the front door was locked. Caton started to go out of the bathroom, but Brown warned him not to go. Caton did not heed the warning; instead, he opened up the bathroom door and walked out, in a hunched or squatted-down manner. As soon as Caton went out of the bathroom, Brown heard a shot, and when he opened the bathroom door, he saw Caton lying on the floor. Brown then went and told the motel manager to call an ambulance. Caton subsequently died.

When officers from the North Little Rock Police Department arrived on the scene, Brown gave them a description of the gunman. He said the gunman was a black male in his mid-twenties and approximately five feet, nine inches tall, and was wearing a burgundy windbreaker, a black V-neck sweater, beige pants, and a red toboggan-style cap. Brown described the gun as a nickel-

plated semiautomatic handgun. Brown subsequently identified Appellant's photograph out of a police lineup. He also identified Appellant as the perpetrator in court.

At the scene, police discovered a fingerprint and a palm print on a plexiglass window that had been busted out of Brown's room. Later that day, they transported the window to the Arkansas State Crime Laboratory, where a latent-print examiner ran the prints through the Automated Fingerprint Identification System (AFIS) and received a positive match for Appellant. Also on that same date, police went to Appellant's home to look for clothing that Appellant was wearing during the crimes. While there, they obtained consent to search the home from Appellant's father, and they found a sweater and a pair of pants matching Brown's description.

Appellant was subsequently arrested on September 27, 2000, on a theft warrant involving an unrelated report previously filed with the North Little Rock Police. He was brought to the police station, read his *Miranda* rights, and questioned about the theft. At some point during the interview, one of the detectives began questioning Appellant about the murder at the Sportsman's Inn. Appellant told the detective that he had gone to the Sportsman's Inn to collect twenty dollars from someone who owed it to him. While there, he said he was approached by Caton, who asked Appellant if he knew where he could get some drugs. Appellant sold Caton the drugs, and Caton paid for them with a hundred-dollar bill. Appellant figured that Caton must have had more money, so he went and got his friend Martin "Bo" Jacobs. Appellant and Jacobs then made a plan to "hit the lick," or commit a robbery. The plan was to rob Caton of both his money and the drugs that Appellant had just sold him.

According to Appellant, he approached Brown's room alone and knocked on the door. Once Brown opened the door, Appellant stepped inside and started asking Caton for his money. Jacobs then came in and proceeded to "draw down" on the victims. Brown dropped his money, ten dollars, but Caton would not drop his. Instead, Caton ran into the bathroom saying that he did not want to be shot. Appellant then told Caton to come out of the bathroom with the money. He then attempted to reassure Caton by telling him that, "Dude is not gonna shoot you dude just want the money." Caton told him his money was in his room. Appellant told Caton to come out and they would get the money from his room. Caton opened the bathroom door and threw his room key

on the bed. Appellant then left the room and told Jacobs to "handle his business." At this point, either Brown or Caton shut the door, leaving Appellant and Jacobs outside. Appellant then began beating on the plexiglass window, trying to scare them. He stated that he beat on the window two or three times with the back of his fist. On the last hit, the window fell out. Jacobs then reached through the window. Appellant stated that he heard Caton hollering, "You little son-of-a-bitch" and then heard a gunshot. After that, Appellant fled the scene.

Based on the foregoing, Appellant was charged with capital murder, aggravated robbery, and theft of property. Prior to trial, the State waived the death penalty. Appellant was tried by a jury on May 22, 2002, and he was convicted of all three offenses. Appellant was automatically sentenced to life imprisonment without parole for the capital murder. The theft charged was then merged with the aggravated robbery, for which he was sentenced to twenty years' imprisonment. This appeal followed.

### I. Sufficiency of the Evidence

Appellant argues that the evidence was insufficient to convict him of capital murder, because it was circumstantial and did not exclude every reasonable hypothesis other than his guilt. We do not reach the merits of this point, because Appellant failed to preserve his argument below. This court has repeatedly held that Ark. R. Crim. P. Rule 33.1 requires that a motion for directed verdict be made at the close of the State's case and again at the close of all of the evidence. *See, e.g., Doss v. State*, 351 Ark. 667, 97 S.W.3d 413 (2003); *Grady v. State*, 350 Ark. 160, 85 S.W.3d 531 (2002); *Pyle v. State*, 340 Ark. 53, 8 S.W.3d 491 (2000). This renewal is more than a matter of mere form; it goes to the substance of the evidence arrayed against the criminal defendant. *Cathey v. State*, 351 Ark. 464, 95 S.W.3d 753 (2003); *Willis v. State*, 334 Ark. 412, 977 S.W.2d 890 (1998). Accordingly, the failure to challenge the sufficiency of the evidence at both the close of the State's case and the close of all of the evidence will constitute a waiver of any question pertaining to the sufficiency of the evidence on appeal. *See Doss*, 351 Ark. 667, 97 S.W.3d 413; *Cathey*, 351 Ark. 464, 95 S.W.3d 753; *Grady*, 350 Ark. 160, 85 S.W.3d 531.

Here, the record reflects that after the State presented its case in chief, defense counsel made the following motion:

I'd move for a directed verdict, Your Honor, on the charge of capital murder. Testimony so far the key witness didn't see who shot who. There was testimony that he observed a gun in the hand of defendant but he never testified that he saw the defendant shoot anybody. And the defendant says he didn't shoot anybody through the statement he gave.

The trial court denied the motion, and instructed defense counsel to call his first witness. Thereafter, the defense presented testimony from Marilyn Larry and Appellant. Following Appellant's testimony, the defense rested, and the State announced that it had no rebuttal. The trial court then recessed the jury and went into chambers to discuss jury instructions with the attorneys. Defense counsel never renewed the directed-verdict motion. As such, Appellant's challenge to the sufficiency of the evidence is not preserved for our review.

## II. Speedy Trial

Appellant argues that the trial court erred in denying his motion to dismiss for lack of a speedy trial. Pursuant to Ark. R. Crim. P. 28.1, the State is required to try a criminal defendant within twelve months, excluding any periods of delay authorized by Ark. R. Crim. P. 28.3. *Moody v. Arkansas County Circuit Court*, 350 Ark. 176, 85 S.W.3d 534 (2002); *Turner v. State*, 349 Ark. 715, 80 S.W.3d 382 (2002). This means that the accused must be tried within twelve months of the date the charges were filed, except that if prior to that time the defendant has been continuously held in custody, or has been lawfully at liberty, the time for trial commences running from the date of arrest. *Id. See also* Ark. R. Crim. P. 28.2.

If a defendant is not brought to trial within the requisite time, Ark. R. Crim. P. 30.1 provides that the defendant will be discharged, and such discharge is an absolute bar to prosecution of the same offense and any other offense required to be joined with that offense. *Moody*, 350 Ark. 176, 85 S.W.3d 534; *Turner*, 349 Ark. 715, 80 S.W.3d 382. Once the defendant presents a *prima facie* case of a speedy-trial violation, *i.e.*, that the trial is or will be held outside the applicable speedy-trial period, the State has the burden of showing that the delay was the result of the defendant's conduct or was otherwise justified. *Id.*; *Ferguson v. State*, 343 Ark. 159, 33 S.W.3d 115 (2000).

■ Here, the record reflects that Appellant was arrested on September 27, 2000, but he was not tried until May 22, 2002, 602 days after his arrest. Based on these dates, Appellant made a *prima facie* case of a speedy-trial violation, as he was tried 237 days beyond the one-year period. The State contends that there are in excess of 350 days that were properly excluded from the one-year period for speedy trial. Therefore, the State asserts that the trial court was correct in denying Appellant's motion to dismiss.

■ Before addressing each of the excludable time periods, we note that Appellant's argument on appeal is less of a challenge to the existence of the excludable periods, and more of a challenge to the proof of the existence of those excludable periods. In other words, Appellant's chief complaint on appeal is that the periods of delay were not sufficiently proven by the State through contemporaneous docket entries or written orders. There is no merit to this complaint, as our review of the record reveals that the reasons for each of the delays in this case were memorialized in proceedings on the record. This court has held that it will uphold excluded periods without a written order or docket entry where the record clearly demonstrates that the delays were attributable to the defendant or legally justified and where the reasons for the delays were memorialized in the proceedings at the time of the occurrence. *See Miles v. State*, 348 Ark. 544, 75 S.W.3d 677 (2002); *Jones v. State*, 347 Ark. 455, 65 S.W.3d 402 (2002); *Chenowith v. State*, 341 Ark. 722, 19 S.W.3d 612 (2000) (*per curiam*). With this principle in mind, we address the periods of delay.

*January 30, 2001, to May 21, 2001 (111 days)*

This period actually contains two, overlapping periods that are both excludable under Rule 28.3. The first period is that from January 30, 2001, to March 27, 2001. The record reflects that during Appellant's arraignment, on December 4, 2000, the trial court appointed the public defender's office to represent Appellant and enter his plea of not guilty. Thereafter, the trial court asked the case coordinator for a trial date. The case coordinator gave the date of January 30, 2001. Counsel appearing on behalf of the public defender informed the court that because this was a capital-murder case, the attorney who would likely be assigned to Appellant's case would need more time to prepare. The trial court then set the trial for March 27, 2001. The State asked that speedy trial be tolled from January 30 to March 27. The trial court declined to rule on

the issue, noting that "we got plenty of time." The trial court then observed that the issue could be taken up at a later date.

Eventually, the trial court took up the issue of the excludability of this time period at a hearing on February 11, 2002. At that hearing, the State argued that the time was excludable because the delay was attributable to the defense, who had asked for more time to prepare the case. The trial court agreed with the state and excluded the time. Defense counsel did not object to the prosecutor's motion; however, he did ask whether this excludable period was reflected on the docket itself. The trial judge responded that his notes reflected as much. Defense counsel made no further inquiry.

This court has repeatedly held that delays resulting from continuances requested by the defendant or defense counsel are excluded from the calculation of the speedy-trial period. *See, e.g., Gamble v. State*, 350 Ark. 168, 85 S.W.3d 520 (2002); *Miles*, 348 Ark. 544, 75 S.W.3d 677; *Camargo v. State*, 346 Ark. 118, 55 S.W.3d 255 (2001). Appellant contests whether this period may actually be called a "continuance." He suggests that the first trial date, January 30, 2001, would not have given defense counsel time to prepare for the capital-murder trial, as he claims it was only one month from the date that the public defender's office was appointed. We are not persuaded by this argument for two reasons. First, Appellant is wrong in suggesting that the date of January 30 would only have given the defense one month to prepare. The date was set at the December 4 arraignment, which would have given counsel almost two months to prepare.

Second, Appellant is wrong to suggest that just because the word "continuance" was not used by the public defender, we should not consider this period as a delay requested by the defendant. Were we to accept this argument, we would be placing form over substance. The record reflects that the public defender informed the trial court that because it was a capital case, the attorney likely to be assigned the case was "probably going to need more time to prepare." Clearly, this is a request by defense counsel to continue the trial date. Accordingly, we affirm the trial court's ruling that this period, from January 30 to March 27, is excluded from the calculation of speedy trial.

The next period of delay overlaps the previous period, as it runs from March 1, 2001, to May 21, 2001. The record reflects that on February 12, Appellant changed his plea from not guilty to

not guilty by reason of mental disease or defect. On March 1, the trial court entered an order that Appellant be evaluated by the Arkansas State Hospital. The state hospital's evaluation report was filed of record on May 21.

 This court has consistently held that the time necessary to complete a mental examination requested by a defendant, pursuant to Ark. Code Ann. § 5-2-305 (Repl. 1997), is excluded from the one-year period for speedy trial. *See* Rule 28.3(a); *Camargo*, 346 Ark. 118, 55 S.W.3d 255; *Scott v. State*, 337 Ark. 320, 989 S.W.2d 891 (1999). The excludable period resulting from a defendant's request for a mental examination runs from the date the exam is ordered to the date the report is filed with the trial court. *Id.* Here, the order for evaluation was entered on March 1,[1] and the report was filed with the trial court on May 21. Accordingly, this period was properly excluded from the calculation of speedy trial. We thus affirm the trial court's exclusion of the combined time of these two periods, which ran from January 30, 2001, to May 21, 2001.

*May 29, 2001, to July 6, 2001 (38 days)*

The record reflects that on May 29, 2001, defense counsel asked the trial court to set a competency hearing, based on some of the information contained in Appellant's mental evaluation. The trial court granted the request and set the hearing for July 6, 2001. Pursuant to the prosecutor's request, the trial court ruled that the period from May 29 to July 6 would be excluded from the speedy-trial calculation. Defense counsel agreed that under Rule 28.3(a), the time is tolled.

 Appellant does not challenge the substance of the trial court's ruling on this period. Rather, he argues that it should not be excluded because the docket entry is insufficient. We reject this argument. As stated above, the transcript of the hearing, where defense counsel requested the competency hearing and conceded

---

[1] The State asserts that this period began running on February 12, the date that the trial court orally granted Appellant's request for evaluation. However, this court has held that the relevant date is the date that the order for evaluation is entered, which, in this case, is March 1. *See Turner*, 349 Ark. 715, 80 S.W.3d 382; *Scott*, 337 Ark. 320, 989 S.W.2d 891. In any event, the beginning date is largely irrelevant, as this period overlaps the previous one.

the excludability of the time period, is a record sufficient to satisfy Rule 28.3. Accordingly, we affirm the trial court's exclusion of this period.

### July 23, 2001, to August 6, 2001 (14 days)

The record reflects that defense counsel filed four pretrial motions on July 23, 2001. The trial court set a hearing for those motions on August 6, 2001. On that date, the State indicated that one of its necessary witnesses was out of town and unavailable. The trial court continued the matter for one week. Thereafter, on August 13, 2001, the motions were heard and ruled upon by the trial court. Periods of time attributable to delays from pretrial motions filed by the defendant may be excluded from the speedy-trial period under Rule 28.3. *Turner*, 349 Ark. 715, 80 S.W.3d 382; *Ferguson*, 343 Ark. 159, 33 S.W.3d 115; *Gwin v. State*, 340 Ark. 302, 9 S.W.3d 501 (2000). The excludable period contemplated by the rule begins at the time the pretrial motion is made and includes those periods of delay attributable to the defendant until the motion is heard by the court and not more than thirty days thereafter. *Id*.

Here, the pretrial motions were made when they were filed on July 23, 2001. They were set for hearing on August 6. The State sought and received a one-week continuance of the hearing, and the motions were heard and ruled upon on August 13. The continuance requested by the State is not excluded from the period for speedy trial. Accordingly, the excludable time for pretrial motions is from July 23 to August 6.

### September 18, 2001, to January 23, 2002 (127 days)

The next excludable period resulted from Appellant's decision to have new counsel appointed, after it was disclosed to him that his counsel, Bret Qualls, had a possible conflict of interest. The matter was brought to the trial court's attention at a hearing on September 13, 2001, five days before the trial was scheduled to start. Mr. Qualls explained that he had recently discovered that another attorney in the public defender's office had previously represented Dwain Brown, one of the prosecution's key witnesses, on a felony non-support charge. The trial judge explained the possible conflict to Appellant. He also stated that he, frankly, did not believe there was an actual conflict. He then told Appellant that he could elect to go with his current counsel and go to trial as

scheduled, or he could choose to have new counsel appointed and have his trial postponed. Appellant chose the latter option.

■ Following Appellant's decision, the trial court ruled that speedy trial would be tolled until a new trial date is set and a new lawyer appointed. The trial court reasoned that the delay was not at all the fault of the State. The docket sheet reflects that on September 24, 2001, new counsel, William McLean, was appointed, and the trial was set for January 23, 2002. This court has held that when the defendant is scheduled for trial within the time for speedy trial, and the trial is postponed due to the need for the appointment of new counsel, such delay is excludable for good cause, pursuant to Rule 28.3(h). *See Blackwell v. State*, 338 Ark. 671, 1 S.W.3d 399 (1999); *Lynch v. State*, 315 Ark. 47, 863 S.W.2d 834 (1993).

■ Appellant does not specifically contest the exclusion of this time period from the calculation of speedy trial. Instead, he again argues that the trial court was wrong to exclude the delay because there is no contemporaneous written order or docket entry. We again reject this argument, as the delaying act and the reasons therefore have been memorialized by the transcript of the proceedings.

*January 23, 2002, to April 10, 2002 (77 days)*

The final excludable period is that resulting from the prosecution's motion to continue the trial scheduled for January 23, 2002, because a key witness, Dwain Brown, was not available. In its motion, the State asserted that Brown's testimony was material to its case and that it had exercised due diligence in obtaining his testimony from trial. The State issued a subpoena for Brown on September 24, 2001, and had maintained contact with him for the past year through an investigator who worked for the prosecuting attorney's office. In addition, the State averred that there was a reasonable basis to believe that they would obtain Brown's testimony because they now had knowledge of Brown's whereabouts.

The trial court held a hearing on the State's motion on January 22, 2002. At that hearing, defense counsel stated that he did not object to the grant of a continuance, but questioned whether the continuance would be an excludable period of time if an issue arose with regard to speedy trial. The trial court granted the continuance, but reserved any ruling on the issue of the excludability of the continuance, as a speedy-trial violation had not yet been implicated. The trial was then scheduled for April 10.

Thereafter, on February 11, the State requested that the trial court issue a ruling with regard to whether the continuance granted at the State's behest would be excluded under the speedy-trial rule. At that time, defense counsel objected to the time being excluded, arguing that the State could have procured the witness and had failed to show that it exercised due diligence in that regard. The trial court disagreed and ruled that the period from January 22 to April 10 would be excluded.

Pursuant to Rule 28.3(d)(1), a continuance granted at the request of the prosecuting attorney shall be excluded in computing the time for trial where the continuance is granted because of the unavailability of evidence material to the State's case when due diligence has been exercised to obtain such evidence and there are reasonable grounds to believe it will be available at a later date. *See Miles*, 348 Ark. 544, 75 S.W.3d 677; *Chenowith*, 341 Ark. 722, 19 S.W.3d 612. The State presented evidence that Brown, as a witness to the murder, was material to its case and that it had exercised due diligence in obtaining Brown's presence for trial. The State also averred that it had information regarding Brown's whereabouts and, thus, it was likely that he would be available to testify at a later date. Accordingly, the period from January 22, 2002, to April 10, 2002, was properly excluded.

In sum, the foregoing periods make up a total of 367 days that are excludable from the calculation of the one-year period for speedy trial. This is more than sufficient to overcome the 237 days beyond the one-year period in which Appellant was tried. We thus affirm the trial court's denial of Appellant's motion to dismiss.

### III. Motion to Suppress

For his final point on appeal, Appellant argues that the trial court erred in denying his motion to suppress his custodial statement for two reasons. First, he asserts that his arrest on a theft warrant was a pretext to get him into custody so police could interrogate him about the murder at the Sportsman's Inn. To support this argument, Appellant relies on *State v. Sullivan*, 348 Ark. 647, 74 S.W.3d 215 (2002). Second, he asserts that the State failed to promptly bring him before a judicial officer for an arraignment and a probable-cause determination, pursuant to Ark. R. Crim. P. 4.1 and 8.1. In reviewing the trial court's denial of a

motion to suppress evidence, we conduct a *de novo* review based on the totality of the circumstances, reviewing findings of historical fact for clear error and determining whether those facts give·rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court and proper deference to the trial court's findings. *See Cummings v. State*, 353 Ark. 618, 110 S.W.3d 272 (2003); *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003). With this standard in mind, we turn to Appellant's arguments.

### A. Pretextual Arrest

Appellant argues that his statement to police should have been suppressed because it was the product of a pretextual arrest on a warrant for theft of property. He contends that the proof shows that the theft warrant was procured by the police after they had developed him as a suspect in the aggravated robbery and murder for the sole purpose of questioning him about those crimes. He contends further that the police admitted as much during the suppression hearing. He therefore asserts that his arrest was in violation of this court's precedents and that, accordingly, his statement should have been suppressed as fruit of the poisonous tree.

The State does not dispute that the police officers in this case obtained the theft warrant for the purpose of questioning Appellant about the aggravated robbery and murder. However, the State contends that Appellant's arrest did not violate our holding in *Sullivan*, 348 Ark. 647, 74 S.W.3d 215, because the officers had probable cause to arrest Appellant for these crimes. We agree.

In *Sullivan*, this court stated that where there is probable cause to arrest for the greater, more serious offense, the need for a pretext analysis is obviated. To support this conclusion, this court relied on the holding in *Ray v. State*, 304 Ark. 489, 803 S.W.2d 894, *cert. denied*, 501 U.S. 1222 (1991), wherein this court held that "where the intent of the officer is to make an arrest as an excuse for making a search for evidence of a different and more serious offense *for which no probable cause to arrest exists*, there is a pretextual arrest." *Id.* at 495-96, 803 S.W.2d at 897 (emphasis added) (citing *Richardson v. State*, 288 Ark. 407, 706 S.W.2d 363 (1986)). *See also Johnson v. State*, 299 Ark. 223, 772 S.W.2d 322 (1989) (rejecting the appellant's contention that his being stopped for a traffic violation was a pretext, because the record reflected that the police had probable cause to stop and detain the appellant

for the offense of rape). Thus, where the record reflects that there was probable cause to arrest the defendant on the greater offense for which he or she was convicted, there is no need to determine whether the defendant's arrest on a lesser offense was a pretext.

In the present case, there was probable cause to arrest Appellant for aggravated robbery and capital murder at the time that he was arrested on the theft warrant and subsequently questioned about the homicide. Dwain Brown was an eyewitness to the robbery committed by Appellant and an "ear" witness to the actual shooting of Caton. Immediately after the murder, Brown gave police a description of the gunman. He said that the perpetrator was a black male, somewhere in his mid-twenties, and approximately five feet, nine inches tall. The record reveals that Appellant is a black male, who was twenty years old at the time and is approximately five feet, seven inches tall. Brown later identified Appellant as the perpetrator in a photographic lineup and at trial.

Brown also described Appellant as wearing a burgundy windbreaker, a black V-neck sweater, beige pants, and a red toboggan-style cap. The record reveals that police went to Appellant's home on the date of the murder and obtained consent to search from Appellant's father. There, they found a black V-neck sweater and a pair of beige pants belonging to Appellant. In addition to Brown's statements, police recovered part of a broken-out plexiglass window from the murder scene, on which they found a fingerprint and a palm print. This evidence was then immediately taken to the State Crime Lab, and the print examiner identified both prints as matching those on file for Appellant.

It is well settled that a police officer may arrest a person without a warrant if the officer has reasonable or probable cause to believe that the person committed a felony. Ark. R. Crim. P. 4.1(a)(i). Probable cause exists where there is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious person to believe that a crime has been committed by the person suspected. *Martinez v. State*, 352 Ark. 135, 98 S.W.3d 827 (2003); *Smith v. State*, 343 Ark. 552, 39 S.W.3d 739 (2001); *Humphrey v. State*, 327 Ark. 753, 940 S.W.2d 860 (1997). Probable cause to arrest without a warrant does not require the degree of proof sufficient to sustain a conviction. *Id.* In assessing the existence of probable cause, our review is liberal rather than strict. *Brunson v. State*, 327 Ark. 567, 940 S.W.2d 440, *cert. denied*, 522 U.S. 898 (1997); *Baxter v. State*, 324 Ark. 440, 922

S.W.2d 682 (1996). All presumptions are favorable to the trial court's ruling on the legality of an arrest, and the burden of demonstrating error is on the appellant. *Criddle v. State*, 338 Ark. 744, 1 S.W.3d 436 (1999); *Humphrey*, 327 Ark. 753, 940 S.W.2d 860.

██ ██ Based on the foregoing, we conclude that there was probable cause to arrest Appellant without a warrant for aggravated robbery and capital murder. As such, the need to conduct a pretext analysis is obviated. We thus affirm the trial court's denial of Appellant's motion to suppress his custodial statement.

*B. Failure to Promptly Bring Appellant Before a Judicial Officer*

Appellant contends that he was arrested on September 27, 2000, but he was not brought for an initial appearance before a judicial officer until December 4, 2000. He argues that this lengthy delay violates Rules 4.1 and 8.1, as well as case law from this court and the United States Supreme Court. Based on this violation, Appellant argues that his custodial statement should have been suppressed. We do not reach the merits of this argument, as it was not fully developed below and was not specifically ruled on by the trial court.

The record reflects that Appellant filed a written motion to suppress on July 23, 2001. The motion sought suppression of his custodial statement for a variety of reasons. One of those reasons was that the "arrest of Mr. Romes violated reasonable cause restrictions of Rule 4.1 of the Arkansas Rule of Criminal Procedure." Another reason was that because Appellant was initially arrested on a theft warrant, his arrest was a "pretext" to question him about the murder. Rule 8.1 was not cited in Appellant's suppression motion; however, the following related argument was made:

> Contrary to the requirements of Rule 7.2 [of the Arkansas Rules of Criminal Procedure], the defendant endured prolonged interrogation at the North Little Rock Police Department and was then transferred to two different jails before he was arraigned. Such delay in bringing defendant before a judicial officer should not be sanctioned, nor should leaving the required 7.2(a)(vi) language out of the warrant be sanctioned.

On August 13, 2001, a hearing was held on the motion to suppress, as well as on other pretrial motions filed by Appellant. During the

testimony, the only evidence developed concerning Appellant's statement was the issue of pretextual arrest. There was no evidence presented as to the "delay" in bringing Appellant before a judicial officer or as to the lack of a reasonable-cause determination under Rule 4.1. At the conclusion of the hearing, the trial court simply ruled: "Defendant's motion to suppress the statement is denied[.]"

■ This court will not address an argument on appeal where the record is "barren of proof" as to the allegation made. *Munnerlyn v. State*, 292 Ark. 467, 470, 730 S.W.2d 895, 897 (1987). It is the appellant's burden to present a case before the trial court that fully and completely develops all the issues. *See Raymond v. State*, 354 Ark. 157, 118 S.W.3d 567 (2003); *Walker v. State*, 314 Ark. 628, 864 S.W.2d 230 (1993). Moreover, it is the appellant's burden to obtain a clear ruling on an issue from the trial court. *Misskelley v. State*, 323 Ark. 449, 915 S.W.2d 702, *cert. denied*, 519 U.S. 898 (1996); *Bowen v. State*, 322 Ark. 483, 911 S.W.2d 555 (1995), *cert. denied*, 517 U.S. 1226 (1996). In both *Misskelley* and *Bowen*, the appellants raised multiple arguments in their motions to suppress. This court refused to reach the merits of those arguments that were not specifically ruled upon by the trial court in denying the motions.

■ Here, the issues regarding the delay in being brought before a judicial officer were raised by Appellant in his written motion to suppress. However, they were not developed, either factually or legally, during the hearing on the motion. To the contrary, the record of the hearing demonstrates that Appellant abandoned these arguments in favor of pursuing the issue of his alleged pretextual arrest. Moreover, the record demonstrates that Appellant did not obtain clear rulings on these issues. Accordingly, the issues he now raises on appeal, regarding Rules 4.1 and 8.1, are not preserved for our review.

### IV. Rule 4-3(h)

Because Appellant received a sentence of life imprisonment without parole, the record in this case has been reviewed pursuant to Ark. Sup. Ct. R. 4-3(h) for adverse rulings objected to by Appellant but not argued on appeal. No such reversible errors were found. For the aforementioned reasons, the judgment of conviction is affirmed.