Antonio Dewayne WALKER *v.* STATE of Arkansas

CR 02-955                                    110 S.W.3d 752

Supreme Court of Arkansas
Opinion delivered May 1, 2003

*Robert L. Scott*, for appellant.

*Mike Bebee*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

W. H. "DUB" ARNOLD, Chief Justice. Appellant, Antonio "Tony" Dewayne Walker, appeals his conviction of two counts of capital murder for the deaths of Derrick Hardy and Marcus Hamilton and two counts of aggravated robbery. He was sentenced to two life sentences for the murders plus two 720-month sentences for the robberies, all to be served consecutively. We affirm.

On November 15, 1999, police were called to the scene of a "structure fire" on Taylor Road in North Little Rock. Upon their arrival, they found a burning car. Firefighters were also called to the scene; and, once they had extinguished the flames, police officers found two bodies in the trunk of the vehicle, determining immediately that at least one of the bodies had been shot. Autopsies subsequently revealed that both victims, Hardy and Hamilton, had been shot in the head and that the shots had been inflicted prior to the fire. Medical evidence, in the form of carbon-monoxide levels in the victims' blood, established that both victims had apparently been alive for some period of time after being shot and after the fire was actually started, although both men were most likely unconscious at the time.

Appellant was later arrested in connection with the murders. He was charged with two counts of capital murder and two counts of aggravated robbery, stemming from the theft of a stereo system that had been installed in victim Hardy's vehicle. Testimony adduced at trial indicated that appellant and several others had severely beaten both victims before stealing the stereo, shooting the men, placing them in the trunk of victim Hardy's vehicle, and setting fire to the vehicle.

After a two-day jury trial, appellant was convicted on January 9, 2002, of all charges. As the State had previously waived the death penalty, appellant was sentenced to two terms of life imprisonment on each of the capital murder charges and two 720-month prison terms for each of the aggravated robberies, all to run consecutively. On appeal, appellant does not challenge the sufficiency

of the evidence; rather, appellant asserts that the trial court erred in the following ways:

1) The trial court committed reversible error when it denied appellant's motion in limine to show third-party culpability, thereby prohibiting appellant from advancing a defense;

2) The trial court committed reversible error by allowing the testimony of Trendis Walker that appellant had been previously shot in an unrelated aggravated robbery and the testimony of Carlos Walker that he had sought protective custody from Little Rock detectives, as opposed to granting a mistrial; and

3) The trial court committed error by failing to merge the aggravated-robbery convictions and by denying appellant's motion to set aside the aggravated-robbery convictions.

## I.   Motion in Limine

Prior to trial, appellant had filed a motion in limine seeking to introduce testimony and evidence that he maintained would demonstrate a third party's involvement in the crimes with which appellant was charged. Appellant alleged that the murder of victim Derrick Hardy might have been committed in retaliation for the murder of a woman named Tiffany Rush, the mother of Hardy's child. Apparently, some had considered Hardy to be a suspect in Rush's death.

At trial, appellant proffered the testimony of Germaine Wiggins, Tiffany Rush's brother. Wiggins proffered that Rush died when "someone broke in the house and shot her," but he stated that he did not know who the person was. He further stated that Derrick Hardy was living with Ms. Rush at the time of her death and that the two of them had a child together. Appellant's counsel (defense counsel) questioned Wiggins regarding his thoughts about who might have killed Ms. Rush. The following exchange occurred:

DEFENSE COUNSEL:   Mr. Wiggins, did you consider that Derrick Hardy was at least responsible for your sister's death?

WIGGINS:   No.

| | |
|---|---|
| DEFENSE COUNSEL: | Okay. You never thought that at all? |
| WIGGINS: | No. |
| DEFENSE COUNSEL: | You never considered that a possibility? |
| WIGGINS: | No. I was upset about it, to the fact, but, no. |
| DEFENSE COUNSEL: | Okay. Did you ever — did you think that the reason that Tiffany was killed was that there was someone trying to settle a grudge with Derrick? |
| WIGGINS: | I didn't know. |

Hardy was never arrested in connection with the murder of Ms. Rush. Appellant's counsel averred that he believed a Little Rock police detective, Steve Moore, would testify that Derrick Hardy was investigated as a suspect but was never charged in Ms. Rush's death. Appellant's theory was that the instant case was "a revenge by Germaine Wiggins or people acting on his behalf against Derrick Hardy." The trial court ruled that the proffered testimony would not be allowed into evidence because it was "high[ly] conjectural and speculative." We agree with the trial court.

■ ■  On review, we must determine whether the trial court abused its discretion in refusing to allow evidence to be admitted. *Burmingham v. State*, 342 Ark. 95, 27 S.W.3d 351 (2000). We have held that a defendant may introduce evidence tending to show that someone other than the defendant committed the crime charged, but such evidence is inadmissible unless it points directly to the guilt of the third party. Evidence which does no more than create an inference or conjecture as to another's guilt is inadmissible. *Id.*; *Zinger v. State*, 313 Ark. 70, 852 S.W.2d 320 (1993) (citing *State v. Wilson*, 367 S.W.2d 589 (N.C. 1988)). This rule does not require that any evidence, however remote, must be admitted to show a third party's possible culpability; evidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt. There must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime. *Burmingham, supra.*

Appellant maintains that this ruling was erroneous on the part of the trial court because the evidence "tends to at least point to Germaine Wiggins as being someone the police would want to question." He asserts that the evidence tended to show Wiggins's motive for wanting to kill Hardy and points out that Wiggins somehow suffered burns on the same night as the Hardy/Hamilton murders, suggesting that this is circumstantial evidence that connects Wiggins to the murders. Notably, Wiggins, in his proffered testimony, did not admit that he was burned; in fact, he was not actually asked whether he had received burns around the time of the murders of Hardy and Hamilton. Rather, during appellant's counsel's arguments to the trial court prior to the beginning of the trial, *counsel* commented that Wiggins had been burned on the same night as the murders. There is no evidence in the record, however, that reveals whether or not Wiggins had burns.

██ Clearly, in this case, appellant's entire argument is basically that some third person who may or may not have a burn and who may or may not have a motive for revenge against one of the murder victims in this case should be implicated as having committed the crimes for which appellant is charged. We agree with the trial court that this is highly speculative and conjectural, and under both *Burmingham* and *Zinger*, the evidence is clearly not admissible. We, therefore, affirm the trial court's denial of appellant's motion in limine in regard to the possible involvement of Germaine Wiggins.

## II. Mistrial

██ Next, appellant asserts that the trial court erred in denying his motion for mistrial. We disagree. We have held that a mistrial is a drastic remedy, to be employed only when an error is so prejudicial that justice cannot be served by continuing the trial, and when it cannot be cured by an instruction to the jury. *Howard v. State*, 348 Ark. 471, 74 S.W.3d 600 (2002); *Jones v. State*, 340 Ark. 390, 10 S.W.3d 449 (2000). The decision to grant a mistrial is within the sound discretion of the trial court and will not be overturned absent a showing of abuse or manifest prejudice to the appellant. *Jones, supra.* An abuse of discretion may be manifested by an erroneous interpretation of the law. *Wilburn v. State*, 346

Ark. 137, 56 S.W.3d 365 (2001); *Seeco, Inc. v. Hales*, 334 Ark. 134, 969 S.W.2d 193 (1993).

Appellant made this motion during the testimony of an admitted accomplice and co-defendant, Carlos Walker, who is also the appellant's cousin. Appellant's objection was made to a follow-up question asked of Walker by the State.

The exchange went as follows:

PROSECUTOR: [D]id [Detective Dallas] or my office ever . . . promise you anything for making those statements on those dates?

WITNESS: The only thing he promised was far as getting me protective custody; but anything else, no ma'am.

A bench conference was then requested by defense counsel, at which time, the following colloquy occurred:

DEFENSE COUNSEL: I move for a mistrial. She can't go into that. Your Honor, I move for a mistrial. She can't go into that.

TRIAL COURT: I don't know what we're going into. I've never heard this.

DEFENSE COUNSEL: Protective custody. He wants protective custody.

PROSECUTOR: He didn't get it. He didn't get any protective custody. That's all — I just am asking him did Detective Dallas make him any promises for anything, and he said protective· custody. And my follow-up question was, "Did you get any?" because he didn't.

TRIAL COURT: Okay. Okay. The motion is denied.

The following exchange then occurred:

PROSECUTOR: Did Detective Dallas fulfill that promise? Did you receive what you requested?

WITNESS: No ma'am.

■ ■ The essence of the testimony elicited by the State in its questioning was, according to the State, to note for the jury that Walker had not received anything from authorities in exchange for his testimony. Appellant asserts that the purpose of the questioning was actually to show that appellant had purportedly threatened Walker or that Walker feared him. However, given the fact that Walker testified anyway, despite the fact that he did not in fact receive protective custody, would seem to indicate that he was *not* afraid to testify against the appellant. Notwithstanding, this argument was not raised below; arguments may not be raised for the first time on appeal. *See Hinston v. State*, 340 Ark. 530, 10 S.W.3d 906 (2000). Any possible prejudice would have been properly cured by an admonition to the jury, which was also not requested on this issue. *See Banks v. State*, 315 Ark. 666, 869 S.W.2d 700 (1994); *Stanley v. State*, 317 Ark. 32, 875 S.W.2d 493 (1994). We, therefore, affirm the trial's court's ruling where Carlos Walker's testimony is concerned.

Next, appellant endeavors to combine the above-discussed issue with a second, separate issue that arose during another witness, Trendis Walker's testimony. During cross-examination of Trendis Walker, a witness called by the State, the following exchange took place:

DEFENSE COUNSEL: And you're not related to [the appellant], and how long have you known him?

WITNESS: I'm not related to neither one of them.

DEFENSE COUNSEL: I know that. You're not related to [the appellant], but you —.

WITNESS: Well, I'd known [the appellant] as well.

DEFENSE COUNSEL: How long have you known [the appellant]?

WITNESS: Well, I've known [the appellant] just about as well as I — I never really just done too much socializing with [the appellant], but I know [the appellant] pretty well even when he got shot in that incident.

A bench conference was then sought by defense counsel. He informed the trial court that the witness had referenced an incident wherein the appellant had been shot and, as a result of the incident, was later charged with a homicide offense. After some discussion, the trial court proposed to admonish the jury not to consider the witness's remark. Defense counsel accepted the trial court's offer, and the court instructed the jury with the following admonition:

> Before we took our recess, the witness made a remark about the defendant being shot. That has nothing to do with this. That was a reference to when he first met him back years ago, and it's not involved in this case, and it has nothing to do with it and is totally irrelevant in this case, and just was a misstatement by this witness. Please disregard that because it has nothing to do with this.

■ ■ First, it must be pointed out that no motion for mistrial was ever made in regard to *this* witness's testimony; therefore, it may not be raised for the first time on appeal. *See Kidd v. State*, 330 Ark. 479, 955 S.W.2d 505 (1997); *Hinston, supra*. Next, we fail to see how the above exchange between defense counsel and *Trendis* Walker can been correlated to the testimony of *Carlos* Walker; there is no indication in the record that any implication could have been derived from Trendis Walker's testimony regarding this appellant. Most importantly here, however, is that appellant requested that an admonition be given to the jury, and one was given. Therefore, he may not now claim that additional relief was appropriate. *See Noel v. State*, 331 Ark. 79, 960 S.W.2d 439 (1998). The trial court is affirmed.

### III. Propriety of Sentencing

Appellant asserts for his final point on appeal that the trial court committed error by failing to merge the aggravated-robbery convictions and by denying appellant's motion to set aside the aggravated-robbery convictions. The State argues that the trial court acted within its discretion and in accordance with Ark. Code Ann. § 5-1-110 (Repl. 1997) with regard to sentencing. We agree with the State and affirm appellant's sentences.

█ Appellant cites *Barnum v. State*, 276 Ark. 477, 637 S.W.2d 534 (1982), as authority for the proposition that a defendant may not be sentenced on both a charged felony and an underlying felony. It is true that this was once the law; however, Ark. Code Ann. § 5-1-110(d)(1), now states, in pertinent part, as follows: "Notwithstanding any provision of law to the contrary, separate convictions and sentences are authorized for: (A) Capital murder, § 5-10-101, and any felonies utilized as underlying felonies for the murder[.]" Trial courts now have specific authority to sentence a defendant for the underlying felony of the capital murder, as well as the murder itself. *Cf. Flowers v. Norris*, 347 Ark. 760, 68 S.W.3d 289 (2002) (holding that conviction and sentence for underlying felony for *attempted* capital murder must merge with the conviction).

Although appellant suggests that the prosecuting attorney submitted that the underlying felonies of the two capital murders would be merged, the State never made such a motion to the court. Actually, the record reflects that appellant waived a sentencing hearing, thereby giving the trial court sole sentencing authority. *See* Ark. Code Ann. § 5-4-103(b)(4) (Repl. 1997). Moreover, the court had the authority to order appellant's sentences to run consecutively, regardless of what, if anything, the State had suggested. *See* Ark. Code Ann. § 5-4-403(a) (Repl. 1997).

█ In short, the trial court did not abuse its discretion in sentencing appellant on the capital murder convictions and their underlying felonies and ordering them to run consecutively. We, therefore, affirm the appellant's sentences.

*IV. Rule 4-3(h) Compliance*

The record has been reviewed for prejudicial error pursuant to Ark. Sup. Ct. R. 4-3(h), and no reversible errors were found.

Affirmed.