David O. STANDRIDGE *v.* STATE of Arkansas

CR 03-558 161 S.W.3d 815

Supreme Court of Arkansas
Opinion delivered April 29, 2004

*Ramey Law Firm, P.A.*by: *Jerry Don Ramey*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

Tom Glaze, Justice. Appellant David Standridge was arrested on July 11, 2001, and charged with rape after his wife and stepdaughter reported to the police that he had sexually abused the daughter. Standridge was eventually also charged with third-degree carnal abuse and incest. After a jury trial on November 13, 2002, Standridge was convicted of all three counts; the jury sentenced him to twenty-five years for the rape conviction, twenty-five years for incest, and six years for carnal abuse. On appeal, he raises six arguments for reversal. Because of double-jeopardy concerns, his sixth point, challenging the sufficiency of the evidence, will be addressed first. *See Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003).

Standridge argues that there was insufficient evidence to support his conviction because no witness actually identified him in the courtroom during trial, and thus his conviction should be set aside. He notes that his wife, Denise Standridge, was asked if she "kn[e]w David Standridge, the defendant," and she answered "Yes, I do." He further argues that the victim also answered affirmatively to the same question, but Standridge asserts that these in-court identifications are insufficient. Standridge concedes that he confessed to raping his stepdaughter, but asserts that a confes-

sion, unless made in open court, will not warrant a conviction unless accompanied by other proof that the offense was committed.

Clearly, it is essential to every case that the defendant be shown as the one who committed the crime, and this court has held that an element to be proved in every case is that the person who stands before the court in the position of the defendant is the one whom the indictment or information accuses and to whom the evidence is supposed to relate. *Womack v. State*, 301 Ark. 193, 783 S.W.2d 33 (1990); *Moore v. State*, 297 Ark. 296, 761 S.W.2d 894 (1988). However, that connection can be inferred from all the facts and circumstances of the case. *Williams v. State*, 308 Ark. 620, 825 S.W.2d 826 (1992); *Becker v. State*, 298 Ark. 438, 783 S.W.2d 33 (1990). In *Williams, supra*, this court cited *Becker, supra*, as follows:

> Here, there were no co-defendants; the defendant was tried alone. He was specifically identified as "Mr. Becker" and "the defendant" throughout the trial. The witnesses were eyewitnesses to the robbery, and the fact that none of them pointed out that the wrong man had been brought to trial was eloquent and sufficient proof of identity.

*Williams*, 308 Ark. at 622.

Likewise, in the present case, only Standridge was on trial. Both his wife and his stepdaughter testified that they knew "the defendant, David Standridge." Further, the victim testified that Standridge would tell her to put her mouth on his penis, and that he licked her "private parts." In addition to the identifications above, this court has frequently held that the uncorroborated testimony of a rape victim alone is sufficient to sustain a conviction. *See, e.g., Jones v. State*, 348 Ark. 619, 74 S.W.3d 663 (2002); *Russey v. State*, 336 Ark. 401, 985 S.W.2d 316 (1999); *Williams v. State*, 331 Ark. 263, 962 S.W.2d 329 (1998). Therefore, there was sufficient evidence to support Standridge's convictions, and the trial court did not err in denying his directed-verdict motion.

For his next point on appeal, Standridge argues that the trial court erred in applying Arkansas' rape shield statute, Ark. Code Ann. § 16-42-101 (Repl. 1999), to exclude evidence relating to previous sexual molestation charges brought by the victim against others. Particularly, Standridge contends that the trial court erred in excluding evidence relating to an accusation by the victim and

her mother against the mother's former husband, Douglas Webb, and accusations made by the victim's mother, Denise Standridge, against her father, James Brents (the victim's maternal grandfather).

The rape shield statute prevents the use of evidence of a rape victim's prior sexual conduct; in pertinent part, the statute provides as follows:

> In any criminal prosecution under § 5-14-101 et seq. [rape] or § 5-26-202 [incest], . . . opinion evidence, reputation evidence, or evidence of specific instances of the victim's prior sexual conduct with the defendant or any other person, evidence of a victim's prior allegations of sexual conduct with the defendant or any other person, which allegations the victim asserts to be true, or evidence offered by the defendant concerning prior allegations of sexual conduct by the victim with the defendant or any other person if the victim denies making the allegations is not admissible by the defendant, either through direct examination of any defense witness or through cross-examination of the victim or other prosecution witness, to attack the credibility of the victim, to prove consent or any other defense, or for any other purpose.

§ 16-42-101(b).

■ The purpose of the statute is to shield victims of rape or sexual abuse from the humiliation of having their personal conduct, unrelated to the charges pending, paraded before the jury and the public when such conduct is irrelevant to the defendant's guilt. *Martin v. State*, 354 Ark. 289, 119 S.W.3d 504 (2003). Accordingly, the trial court is vested with a great deal of discretion in determining whether the evidence is relevant, and we will not overturn the trial court's decision unless it constituted clear error or a manifest abuse of discretion. *Id.*

As noted above, Standridge argues that he should have been permitted to introduce evidence that the victim had made prior allegations regarding other events of sexual abuse. With respect to the victim's former stepfather, Webb, Standridge asserts that the allegations against him in the present case are remarkably similar to the allegations the victim raised against Webb, and as such, the allegations against Webb were relevant and probative, and the trial court erred in excluding any evidence of those allegations. He also claims that the allegations against Webb were important "to show the history of the pattern of the allegations with this family."

■ However, at the rape shield hearing, the victim here testified that, although she did not remember much of the circumstances surrounding the allegations against Webb, because she was only four years old at the time, she remembered what he did to her, and she stated that the allegations against Webb were true. This testimony falls squarely within the ambit of § 16-42-101(b), which excludes "evidence of a victim's prior allegations of sexual conduct with . . . any other person, which allegations the victim asserts to be true[.]" *See also Taylor v. State*, 355 Ark. 267, 138 S.W.3d 684 (2003) (victim's denial that she had formerly made false accusations of rape against another person meant that the rape-shield statute applied to the facts in the case).

The second area of evidence Standridge sought to introduce related to the victim's maternal grandfather, James Brents. Standridge argues on appeal that he should have been permitted to question the victim's mother, Denise Standridge, about the fact that she had filed a complaint against Brents. Standridge claims that this evidence was relevant both to show Denise's state of mind, and also to demonstrate that she exercised a degree of influence over her daughter with regard to making allegations of sexual abuse.

■ ■ We glean from Standridge's argument that he wished to delve into his ex-wife's history of making sexual accusations against family members in order to demonstrate that Denise may have "imposed a predisposition regarding sexual abuse allegations" upon the victim. However, this evidence does not fall under the rape shield statute. It is not evidence of the victim's prior sexual contact with the defendant or any other person, nor is it evidence of the *victim's* prior allegations of sexual conduct with the defendant or any other person. At best, evidence that Denise Standridge once accused her father of sexual abuse would be relevant to show Denise's bias and credibility as a witness in this case, and the trial court ruled to this effect, stating the following:

> If this lady over here [Denise Standridge], if you think she's biased and she put her kid up to making allegations on this case, you can ask her that. . . . And, then, you'll accept her answer; but there's not anything — this doesn't allow you to go to about anything else she may have made or any other alleged misconduct by some other person. If all you're trying to do is get at this lady and not the victim, that she is the one that has encouraged the child, you ask her that. It's not something that the child will be called to account for.

It appears that the court was perfectly willing to allow Standridge to question Denise about *her own* allegations against her father to demonstrate her bias or call her credibility into question. However, an examination of Denise Standridge's trial testimony reveals that Standridge did not broach the subject on cross-examination. Standridge cannot complain on appeal when he failed to take advantage of the court's determination that evidence of Denise's bias was admissible.[1]

█ Standridge's next point on appeal is that the trial court erred by denying his motion to dismiss on speedy trial grounds. Arkansas Rules of Criminal Procedure 28.1 and 28.2(a) require the State to try a defendant within twelve months, excluding any periods of delay authorized by Ark. R. Crim. P. 28.3. *Miles v. State,* 348 Ark. 544, 75 S.W.3d 677 (2002). The twelve-month period for bringing an accused to trial begins to run on the date the information is filed, or the date of arrest, whichever occurs first. *Miles, supra; Jackson v. State,* 334 Ark. 406, 976 S.W.2d 370 (1998); *see also* Ark. R. Crim. P. 28.2(a).

█ The record in this case indicates that Standridge was arrested on July 11, 2001; his jury trial began on November 13, 2002, 490 days later. Once it is shown that a trial was held after the speedy-trial period set out in Rule 28.1 has expired, the State has the burden of showing that any delay was the result of the defendant's conduct or was otherwise legally justified. *Miles, supra; McConaughy v. State,* 301 Ark. 446, 784 S.W.2d 768 (1990). Here, the State has the burden of showing that at least 125 days were properly excluded in order for Standridge to have been timely brought to trial.

The trial in this case was originally scheduled for November 13, 2001. On November 2, 2001, Standridge filed a motion for continuance, asking the court to continue the case "until such

---

[1] Standridge raises a final argument that he renewed his "motion to prohibit imposition of rape shield" during the testimony of Officer Scott Harper of the Atkins Police Department. Standridge suggests that the State opened the door to the rape shield evidence previously excluded by the court when Officer Harper testified that certain knowledge that the alleged victim acquired regarding oral sex was directly related to the defendant. However, a review of the transcript of Officer Harper's testimony does not reveal that Harper ever made such a statement, or that Standridge ever raised any objection about the State opening the door to evidence of the victim's sexual knowledge; nor does Standridge provide a cite to the transcript or the abstract as to where this testimony and objection actually took place.

time as the defendant is provided with a complete copy of the requested discovery." The trial court granted the motion for continuance, continuing the trial from November 5, 2001, until January 23, 2002, a difference of 79 excludable days. On January 7, 2002, the trial court granted Standridge's motion for continuance, which had been filed earlier that same day, continuing the date of a pre-trial hearing until March 4, 2002, and continuing the trial itself "from the present date of January 23, 2002, until further order of this court." The period from January 23, 2002, until March 4, 2002, consisted of 40 days. At a pre-trial hearing on January 28, 2002, the trial court set a trial date of May 22, 2002. At the same time, the court set Standridge's requested rape-shield hearing for March 25, 2002. A written order to this effect was entered on February 14, 2002. This extension of the pretrial hearing from March 4, 2002, until March 25, 2002, added another 21 days to the time excluded from the speedy trial calculation, for a total of 140 days.

 Under Rule 28.3(a), the "period of delay resulting from other proceedings concerning the defendant, including . . . hearings on pretrial motions," shall be excluded in computing the time for trial. Further, under Rule 28.3(c), the "period of delay resulting from a continuance granted at the request of the defendant or his counsel" is also to be excluded. As noted above, Standridge's trial was held 490 days from the date he was arrested. Subtracting 140 days from these 490 days leaves 350 days, well within twelve months from the date of his arrest.

 Standridge raises a further argument that, because there is no docket entry tolling the period from March 4, 2002, until March 25, 2002, speedy trial must be calculated without taking these 21 days into consideration. However, this court has held that, although a trial court should enter written orders, or make docket notations at the time continuances are granted to detail the reason for the continuances and to specify to a date certain the time covered by such excluded periods, a trial court's failure to comply with Rule 28.3 does not result in automatic reversal. *See McConaughy, supra; Cox v. State*, 299 Ark. 312, 772 S.W.2d 336 (1989). We have held that when a case is delayed by the accused and that delaying act is memorialized by a record taken at the time it occurred, that record may be sufficient to satisfy the requirements of Rule 28.3. *Id.* This is based on the familiar principle that a defendant may not agree with a ruling by the trial

court and then attack that ruling on appeal. *Goston v. State*, 326 Ark. 106, 930 S.W.2d 332 (1996).

██ Here, the trial court stated on the record that it was continuing Standridge's rape-shield hearing until March 25, and all attorneys agreed to that date. Further, the court entered its February 14, 2002, order stating that "a hearing on the rape shield motions and all other motions filed herein will be heard on March 25, 2002, at 11:00 a.m., and this matter is set for trial on May 22, 2002." This memorialization of the delay and the reasons therefor satisfy the requirements of Rule 28.3.

▪██ Further, Standridge asserts that any delay between March 4 and March 25 was attributable to the State's failure to provide him with discovery that he had requested. However, our review of the colloquy between the prosecutor, the defense attorney, and the court makes it clear that defense counsel never raised this objection below. During that discussion, Standridge did not raise a concern that the delay in getting a trial date was being occasioned by the State's failure to provide discovery; instead, the court made it clear — and the attorneys apparently agreed — that they needed to hold a hearing on the rape shield motion, which had been filed by Standridge. Standridge was amenable to the March 25 date, and raised absolutely no objection or concern about speedy trial at that time. In criminal cases, issues raised, including constitutional issues, must be presented to the trial court to preserve them for appeal. *Strickland v. State*, 331 Ark. 402, 962 S.W.2d 769 (1998). Moreover, it is incumbent upon an appellant to obtain a ruling from the trial court in order to preserve an argument for appeal. *Id.* Because Standridge did not raise this particular argument before the trial court, he cannot raise it for the first time on appeal. *See Walker v. State*, 353 Ark. 12, 110 S.W.3d 752 (2003).

Standridge's next point on appeal challenges the trial court's denial of his motion, filed on October 12, 2001, to dismiss the overlapping charges of rape and incest. In his motion, Standridge noted that all of the crimes with which he was charged — rape, *see* Ark. Code Ann. § 5-14-103 (Supp. 2003); third-degree carnal abuse, *see* Ark. Code Ann. § 5-14-106 (Repl. 1997); and incest, *see* Ark. Code Ann. § 5-26-202 (Repl. 1997) — all involved the same individuals, time frames, activities, and allegations. The trial court denied Standridge's motion at the pretrial hearing on March 25,

2002, ruling that the additional element in the incest charge kept it from overlapping with rape and carnal abuse, and that the age of the victim prevented the rape and carnal abuse charges from overlapping.

On appeal, Standridge's argument is somewhat confusing, but his first argument appears to contend that the State charged him with rape as a continuing course of conduct. Citing *Tarry v. State*, 289 Ark. 193, 710 S.W.2d 202 (1986), he argues that rape is not defined as a continuing offense. However, the information merely establishes a range of dates within which the criminal conduct occurred. Particularly, the information charges that Standridge engaged in the crime of rape from January 1, 1993, until November 13, 2000; in the crime of third-degree carnal abuse from November 14, 2000, until July 5, 2001; and in the crime of incest from January 1, 1993, until July 5, 2001. Nothing in the information alleges that these were continuing offenses; instead, the charging document alleged different time periods for the commission of the rape and carnal abuse in the third degree, where the offenses were differentiated by the time of their commission in relation to the age of the victim.

Further, Standridge argues that the charges were overlapping and confusing; additionally, he asserts that being charged and tried on these three offenses subjected him to double jeopardy during the process of a single trial. His argument is without merit, because where there is no threat of either multiple punishment or successive prosecutions, the double-jeopardy clause is not offended. *Fletcher v. State*, 318 Ark. 298, 884 S.W.2d 623 (1994) (citing *United States v. Wilson*, 420 U.S. 332 (1975)). This court has held that, for purposes of double jeopardy, whether two offenses are the "same offense" depends on whether each statutory provision requires proof of a fact that the other does not. *See, e.g., Hughes v. State*, 347 Ark. 696, 66 S.W.3d 645 (2002); *Craig v. State*, 314 Ark. 585, 863 S.W.2d 825 (1993) (citing *Blockburger v. United States*, 284 U.S. 299 (1932)). A review of the relevant statutes makes it clear that each offense with which Standridge was charged contains elements that are not present in the other offenses.

Standridge was charged with rape under § 5-14-103(a)(1)(c)(i), which provides that a person commits rape if he engages in sexual intercourse or deviate sexual activity with

another person who is less than fourteen years of age. He was also charged with carnal abuse in the third degree, pursuant to § 5-14-106, which provides that a person commits that offense "if, being twenty (20) years old or older, he engages in sexual intercourse or deviate sexual activity with another person not his spouse who is less than sixteen (16) years old." This court specifically held in *Gaines v. State*, 354 Ark. 89, 118 S.W.3d 102 (2003), that the carnal abuse statute contains elements which the rape statute does not. Specifically, to prove carnal abuse, the State must prove 1) the defendant is twenty years old or older; 2) that the victim is not the defendant's spouse; and 3) the victim is under the age of sixteen. *Gaines*, 118 S.W.3d at 105. Because the carnal abuse statute requires proof of facts that the rape statute does not, the fact that Standridge was charged with both offenses does not violate double jeopardy.

Likewise, incest differs from either rape or carnal abuse in the facts needed to prove each offense. The incest statute provides in relevant part that a person commits incest "if, being sixteen (16) years of age or older, he . . . has sexual intercourse with, or engages in deviate sexual activity with a person he knows to be . . . [a] stepchild or adopted child[.]" § 5-22-202(a)(2). Clearly, this statute encompasses elements found neither in the rape statute nor in the carnal abuse statute; to be found guilty of incest, the State must prove that the defendant engaged in sexual intercourse or deviate sexual activity with a person he knows to be his stepchild. This additional element precludes the invocation of double jeopardy concerns, because the offenses are not the same.

Next, Standridge asserts that the trial court erred when it denied his motion to suppress the statement he gave to Officer Harper of the Atkins Police Department. This court recently clarified the standard of review for cases involving a trial court's ruling on the voluntariness of a confession in *Grillot, supra*, where we stated that we make an independent determination based upon the totality of the circumstances. *Grillot*, 353 Ark. at 310 (citing *Cox v. State*, 345 Ark. 391, 47 S.W.3d 244 (2001)). A statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily and was knowingly and intelligently made. *Id.*; *Jones v. State*, 344 Ark. 682, 42 S.W.3d 536 (2001). In order to determine whether a waiver of

*Miranda* rights is voluntary, this court looks to see if the confession was the product of free and deliberate choice rather than intimidation, coercion, or deception. *Id.*

Standridge was arrested on July 11, 2001, after his wife and stepdaughter contacted the police. At the suppression hearing, Officer Harper testified that he went to the detention center the next day, July 12, 2001, to interview Standridge based on the statements given by the victim. Harper stated that he identified himself to Standridge as an investigator with the Atkins Police Department, saying that the purpose for his being there was to ask him some questions concerning his investigation; Harper also testified that he informed Standridge of his rights prior to interviewing him. Standridge signed a form acknowledging that he understood his *Miranda* rights. Standridge then gave a statement in which he admitted to performing "lewd acts" with the victim; these acts included kissing and "fondling" the victim's vagina and breasts, and engaging in oral sex.

On cross-examination, Harper stated that he had "been told" that persons charged with offenses against children are "very low on the totem pole as far as prisoners go," but had "no actual knowledge of how people who are charged with an offense against a minor are treated by fellow inmates." Harper also conceded that Standridge was "visibly upset" and that he (Harper) was aware that Standridge had made complaints regarding threats that he had received during the night at the jail. Harper also asked Standridge if he "felt like he needed help in this matter, emotional help, psychiatric help," and Standridge responded that "he felt like he needed some emotional help." However, Harper stated, he had no reason to attempt to provide Standridge with any type of psychiatric screening or help prior to talking to him.

The trial court ruled that Standridge's statement appeared to be voluntary, stating that, even though Standridge "may have been emotional or whatever from staying where he was at the jail, I don't feel that that has affected his statement. That might go to its weight; but as far as the conduct of law enforcement in obtaining the statement, it — it appears to be voluntary. So the statement will be admitted."

■■ On appeal, Standridge argues that his statement was the product of coercion, in that Harper knew that individuals charged with violence toward a minor child have "a tough time in incarceration" and knew that Standridge had encountered prob-

lems from other cell mates due to the nature of his charge. However, in determining whether a confession was voluntary, this Court considers the following factors: age, education, and intelligence of the accused, lack of advice of his constitutional rights, length of detention, the repeated and prolonged nature of the questioning, or the use of physical punishment. *Howell v. State*, 350 Ark. 552, 89 S.W.3d 343 (2002)[2]; *Jones, supra.* It must be demonstrated that the activity of the police had a particular effect upon the accused. *Howell, supra.* As the United States Supreme Court stated in *Colorado v. Connelly*, 479 U.S. 157 (1986), there must be an "essential link between coercive activity of the State, on the one hand, and a resulting confession by a defendant, on the other." Thus, courts cannot speculate as to a "defendant's motivation for speaking or acting as he did without some sort of indication from the defendant himself." *Connelly, supra.* The nexus between any conduct of the police, coercive or otherwise, and the statement given by the accused, must be established to consider the remedies that flow from the *Miranda* warnings. *Id.* The proper inquiry is whether the defendant's will has been overborne or his capacity for self-determination critically impaired. *Howell, supra*; *Hill v. State*, 344 Ark. 216, 40 S.W.3d 751 (2001).

 Here, Standridge offers no evidence to establish a nexus between the conduct of the police and his statement, nor anything that would prove a link between "coercive activity of the State" and his resulting confession. He does not claim that he confessed because the police directed someone to beat him up in his cell the night before he gave his statement, nor does he allege any kind of actual police coercion of any sort. Instead, he simply argues that Officer Harper knew that people charged with crimes against children are treated badly; however, this assertion is contradicted by Harper's testimony, wherein he stated that he had no actual knowledge of how people who are charged with an offense against a minor are treated by fellow inmates. Further, the mere fact that Standridge was upset and emotional does not lead automatically to a conclusion that his confession was coerced or

---

[2] *Howell* was overruled in part in *Grillot v. State, supra*, "to the extent that [it was] inconsistent with" *Grillot*. However, the "inconsistency" pertained to that portion of this court's standard of review providing the court, in challenges to denials of suppression motions, must review the evidence in a light most favorable to the State, as appellee.

otherwise involuntary; as the trial court found, that emotion was probably "from staying where he was at the jail." Standridge himself put on no evidence at the suppression hearing that would have contradicted Harper's testimony. Thus, as this court noted in *Howell, supra,* we do not "speculate as to a defendant's motivation for speaking or acting as he did without some sort of indication from the defendant himself."

In an additional argument, Standridge asserts that his waiver of his *Miranda* rights was not knowingly and intelligently made, because Officer Harper was "evasive" about the purpose of the interview in order to get Standridge to talk. Specifically, Standridge points out that Harper testified that he was using the words "lewd act" instead of "rape," because he "didn't want to come out and tell him that I was — wanted to talk to him about a rape." This was so, Harper said, because "when I'm using the word 'rape' the probability of them trying to talk to me about it would be very — would not be conducive. I use another word, which in the definition, lewd is another word to describe the word rape." Standridge offers no authority that would support a conclusion that the police must state with specificity the alleged crime that they are investigating. *See Johnson v. State,* 71 Ark. App. 58, 25 S.W.3d 445 (2000) (rejecting an argument, offered with no citation to authority, that a defendant must be aware that he is a suspect of a specific crime, and must be aware of the specific nature of the possible charges against him, in order to make a voluntary, knowing, and intelligent waiver of his *Miranda* rights). Further, here, Johnson was certainly aware that the investigation was related to allegations that he had engaged in sexual contact with his stepdaughter; therefore, Harper's "evasiveness" does not support a conclusion that suppression of Standridge's confession was appropriate. The trial court did not err in denying his motion to suppress.

Finally, Standridge asserts that the trial court erred in denying his motion for mistrial. We have held that a mistrial is a drastic remedy, to be employed only when an error is so prejudicial that justice cannot be served by continuing the trial, and when it cannot be cured by an instruction to the jury. *Walker v. State,* 353 Ark. 12, 110 S.W.3d 752 (2003); *Howard v. State,* 348 Ark. 471, 79 S.W.3d 273 (2002). The decision to grant a mistrial is within the sound discretion of the trial court and will not be overturned absent a showing of abuse or manifest prejudice to the appellant. *Jones v. State,* 340 Ark. 390, 10 S.W.3d 449 (2000).

Here, Standridge takes issue with the court's comment to a particular juror who expressed concern about whether she could be impartial in a case involving the sexual abuse of a child. The juror stated that she would try to be impartial and to hear both sides, "but I feel like I'm an advocate for children." The court responded, "Well, I'd hope most adults would be, but can you be fair and impartial in this case and hear this case and make a decision based on the evidence and law?" The juror replied that she would try to.

■ On appeal, Standridge argues that the court's comment that "I'd hope most adults would be" advocates for children amounted to an improper comment on the evidence. In his abstract, however, Standridge omits everything that follows this exchange. A review of the trial transcript reveals that the colloquy between the judge and the potential juror went on for some time, and the court repeatedly impressed upon the venire member the importance of a fair and impartial jury, stressing that if a juror could not be impartial, "then both sides can't start off on a level playing field." Although Standridge suggests that the court improperly commented on the facts, it is difficult to interpret the court's comments in such a manner. Even to the extent that the statement could be construed as a comment on the facts, any potential prejudice was immediately and obviously cured by the court's discourse on the need for impartiality and fairness.

■ Standridge argues that the error was compounded by the fact that the trial court offered no curative instruction to the jury regarding the need to disregard his comment. However, Standridge did not request such a curative instruction. This court has repeatedly held that, where an admonition to the jury could have cured the situation, but no such admonition is requested, this court will not say that the trial court's decision to deny the mistrial motion was an abuse of discretion. *Moore v. State*, 355 Ark. 657, 144 S.W.3d 260 (2004); *Jones v. State*, 349 Ark. 331, 78 S.W.3d 104 (2002). Further, we have stated that it is a defendant's duty to request a curative instruction. *Hall v. State*, 314 Ark. 402, 862 S.W.2d 268 (1993). In the present case, no such relief was requested by defense counsel. Standridge's failure to request an admonition at trial cannot inure to his benefit on appeal. *Id.*

Affirmed.