Cite as 2020 Ark. 193

# SUPREME COURT OF ARKANSAS

No. CV-19-750

| | | |
|---|---|---|
| JOHNNY LEE MILLS | | **Opinion Delivered** May 14, 2020 |
| | APPELLANT | |
| | | PRO SE APPEAL FROM THE |
| V. | | LAWRENCE COUNTY CIRCUIT COURT |
| | | [NO. 38CV-19-49] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE HAROLD S. ERWIN, |
| | | JUDGE |
| | | |
| | | <u>AFFIRMED</u>. |

KAREN R. BAKER, Associate Justice

Appellant Johnny Lee Mills appeals from the denial of his pro se petition for writ of

habeas corpus pursuant to Arkansas Code Annotated sections 16-112-201 to -208 (Repl.

2016) seeking scientific testing of evidence from his criminal case. Because Mills failed to

establish the timeliness of the petition or its merit, we affirm the trial court's order.

I. *Background*

In 1994, a jury found Mills guilty of capital murder with the underlying offenses of

kidnapping and rape, and he was sentenced to life imprisonment without parole. We

affirmed. *Mills v. State*, 322 Ark. 647, 910 S.W.2d 682 (1995). In 2019, Mills filed the

petition for scientific testing of evidence in the trial court.[1]

---

[1]While such petitions are properly filed in the trial court under the docket number
for the criminal judgment, Mills's petition was assigned a new civil docket number. The

Mills was found guilty of the murder of Carrie Galbreath. Galbreath's sister testified at trial that she was with Galbreath until 6:50 p.m. on November 28, 1992, and that she loaned Galbreath her car at that time. Brenda Whited testified that on that same evening between 7:00 and 7:30 p.m., she and her husband, Randal Whited, were at a service station when they saw a white female struggling with a black male inside a car. Brenda heard the woman screaming and pleading for help and shouting that the man was going to shoot her, and then she heard gunshots. With Brenda and Randal watching, the man pushed the woman down toward the floorboard of the car and drove to where Brenda was parked and said something Brenda could not hear. As the car drove away, Randal took down the license-plate number, which later proved to be registered to Galbreath's sister. At approximately 9:40 p.m., a police officer found the car near Walnut Ridge with Galbreath's body inside. She had been shot six times at close range. Her underwear and pantyhose, found on the floor of the car, had a bullet hole in them. Both Brenda and Randal identified Mills in a photographic lineup and at trial as the man they had seen driving the car. The bullets that killed the victim were from a gun owned by Mills. DNA testing on semen taking from the victim's mouth established to a definite probability that the semen had come from Mills. When confronted with the DNA evidence, Mills

---

assignment of the incorrect docket number, however, has no effect on the trial court's disposition of the habeas petition. Ark. Code Ann. § 16-112-201(a); *Gipson v. State*, 2019 Ark. 310, at 2, 586 S.W.3d 603, 604 (A petition for a writ of habeas corpus alleging entitlement to new scientific testing must be addressed to the trial court that entered the conviction.).

admitted that he had had sex with the victim but contended that it was consensual. He asserted that a man named Larry White had used Mills's gun to shoot the victim. Two persons who were incarcerated with Mills testified that they had heard Mills talk about killing a girl in Walnut Ridge.

II. *Nature of the Remedy and Standard of Review*

As stated, Mills filed his petition in the trial court for scientific testing pursuant to Arkansas Code Annotated sections 16-112-201 to -208. The statutes are the codification of Act 1780 of 2001 Acts of Arkansas, as amended by Act 2250 of 2005. The Act provides that a writ of habeas corpus may be issued on the discovery of new scientific evidence proving a person actually innocent of the offense for which he or she was convicted. Ark. Code Ann. § 16-112-201; *Marshall v. State*, 2017 Ark. 208, 521 S.W.3d 456. A trial court can order testing under the Act when the proposed testing of the specific evidence may produce new material evidence that would support the theory of defense and raise a reasonable probability that the petitioner did not commit the offense. Ark. Code Ann. § 16-112-202(8)(B); *Pankau v. State*, 2013 Ark. 162.

When the scientific evidence was available at trial, the facts underlying the claim, if proven and viewed in light of the evidence as a whole, must be sufficient to establish by clear and convincing evidence that no reasonable fact-finder would find the petitioner guilty of the underlying offense. Ark. Code Ann. § 16-112-201(a); *Rayfield v. State*, 2020 Ark. 40, 592 S.W.3d 237. It is clearly essential to every case that the defendant be shown as the one who committed the offense. *See Standridge v. State*, 357 Ark. 105, 161 S.W.3d

3

815 (2004). That connection can be inferred from all the facts and circumstances of the case. *Id.* Act 1780 permits summary disposition of a petition if it conclusively shows that the petitioner is entitled to no relief. Ark. Code Ann. § 16-112-205(a); *Gipson v. State*, 2019 Ark. 310, 586 S.W.3d 603.

We do not reverse a trial court's decision to deny a petition under Act 1780 unless it is clearly erroneous. *Rayfield*, 2020 Ark. 40, 592 S.W.3d 237. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id.*

III. *Failure of the Trial Court to Make Required Findings and Hold a Hearing*

A. Mills's Claims for Reversal of the Order

Mills's first argument for reversal of the trial court's order is that the court failed to make the required findings of fact and conclusions of law on his claims for the writ. The trial court found that Mills had failed in his petition to establish its merit. Considering the allegations raised in the petition and the evidence adduced at trial, we cannot say that the trial court's findings were insufficient or that it erred in concluding that the petition lacked merit.

Postconviction scientific testing is authorized only under specified conditions. *See* Ark. Code Ann. §§ 16-112-201 to -203. The petitioner bears the burden of establishing that each condition is satisfied. *McClinton v. State*, 2017 Ark. 360, 533 S.W.3d 578. Failure to meet any one condition precludes scientific testing as a matter of law. *Johnson v.*

4

*State*, 2019 Ark. 391, 591 S.W.3d 265. The conditions to be satisfied for relief under the Act for DNA testing require, among other things, that the DNA testing be available and that that the petitioner identify a theory of defense that would establish his or her actual innocence. *See* Ark. Code Ann. § 16-112-202(6)(B). The petitioner must also show that the proposed testing may produce new material evidence that would support the petitioner's theory and raise a reasonable probability that he or she did not commit the offense. *See* Ark. Code Ann. § 16-112-202(8). That is, Act 1780 does not permit testing of evidence on the basis of a mere assertion of innocence or a theoretical possibility that additional testing might alter the outcome of a trial. *Rayfield*, 2020 Ark. 40, 592 S.W.3d 237; *see also Martin v. State*, 2018 Ark. 176, 545 S.W.3d 763. Testing is authorized only if it can provide materially relevant evidence that will significantly advance the petitioner's claim of innocence in light of all evidence presented to the jury. *McClinton*, 2017 Ark. 360, 533 S.W.3d 578. Here, Mills posited that additional testing might show that Larry White is the man who shot the victim, but he did not raise a reasonable probability that the additional testing he describes would support the allegation.

Mills alleged that the writ should be granted because there was now a more definitive method available for the collection and testing of DNA contained in "epidural skin cells" that might show evidence of contact between the victim and Larry White. He further contended that there were advances in fingerprint, palm-print, and latent-print identification that might identify the person or persons who left an unidentified palm print and fingerprints on the car in which the victim was found. Mills did not meet his

burden of explaining how those methods would be substantially more probative than the testing conducted prior to his trial or that the identification of some other person who left the palm print and fingerprints would support his claim of innocence. Essentially, Mills asserted that he is innocent and argued in conclusory statements that a more thorough examination of the evidence would discredit the State's evidence of his guilt.[2] His mere listing of tests that could be done, however, does not state a ground for the writ because he provided no substantiation in his petition to establish that those tests would produce material evidence that would raise a reasonable probability that he did not commit the offense. Ark. Code Ann. § 16-112-202(8)(B).

The evidence presented to the jury must also be considered when deciding whether testing or retesting of any evidence would provide materially relevant evidence that would significantly advance the petitioner's claim of innocence. *McClinton*, 2017 Ark. 360, 533 S.W.3d 578. We concluded on direct appeal that there was substantial evidence of Mills's guilt to support the jury's verdict of capital murder. *Mills*, 322 Ark. at 656, 910 S.W.2d at 687. His allegations, unsupported by proof of new testing methods, do not demonstrate

---

[2]In his petition, Mills contended that the evidence against him was not sufficient to sustain a finding of guilt; that is, the jury's verdict was in error. A claim based merely on the sufficiency of the evidence to support the judgment, however, is not cognizable under the Act because the Act does not afford a petitioner an opportunity to retry his or her case. *See McClinton v. State*, 2017 Ark. 360, 533 S.W.3d 578. Mills further argued in his petition that he was not found guilty of the underlying offenses to capital murder, i.e., rape and kidnapping. We held on direct appeal that there was substantial evidence of both rape and kidnapping as well as murder; thus, there was substantial evidence to sustain the judgment for capital murder.

that more DNA or fingerprint testing of the evidence adduced at trial would so much as cast doubt on his guilt. Mills's claims amounted to baseless assertions that additional testing might support his allegation that he is innocent if evidence already tested at trial were retested. He did not establish by clear and convincing evidence that no reasonable fact-finder would find him guilty of the capital murder of the victim based on any specific testing.

## B. Timeliness of the Petition

The trial court also ruled that the petition was not timely. Petitioners who file for testing more than thirty-six months after the entry of the judgment must rebut the presumption that the petition is untimely. Ark. Code Ann. § 16-112-202(10). Mills's petition for scientific testing was filed approximately twenty-five years after the judgment of conviction in his case was entered. Accordingly, the presumption against timeliness applied to his petition. The presumption against timeliness may be rebutted by showing that (1) the petitioner was or is incompetent, and the incompetence substantially contributed to the delay; (2) the evidence to be tested is newly discovered; (3) the motion is not based solely on the petitioner's own assertion of innocence, and a denial of the motion would result in a manifest injustice; (4) a new method of technology exists that is substantially more probative than was the testing available at the time of the conviction; or (5) there is other good cause. *Id.* A prerequisite for establishing a prima facie claim under section 16-112-202 includes demonstrating the existence of evidence or scientific methods of testing that had not been available at the time of trial or could not have been previously

7

discovered through the exercise of due diligence. Ark. Code Ann. § 16-112-201(a)(1)(2). Mills did not satisfy any of the factors that would establish that his petition was timely.

## C. Failure to Hold a Hearing

Mills also contends that he was entitled to a hearing on his petition. Section 16-112-205(a) provides that the trial court is not required to hold an evidentiary hearing if the petition, files, and records conclusively show that the petitioner is entitled to no relief. Because Mills's petition was untimely under section 16-112-202(10)(B), and he was clearly entitled to no relief under the Act, the trial court was not obligated to hold a hearing. *Rayfield*, 2020 Ark. 40, 592 S.W.3d 237.

## IV. *Denial of Due Process of Law*

As his second point for reversal of the order, Mills contends that he was denied due process of law in the proceeding on his petition because "the circuit clerk, the prosecuting attorney, the attorney general, and the circuit court" evinced a "habitual lackadaisical attitude toward incarcerated pro se litigants" seeking relief under the statute. As proof that he and others similarly situated are unfairly treated, Mills lists myriad ways in which the circuit clerk, the prosecuting attorney, the attorney general, and the circuit judge failed to follow certain procedural rules and alleges that the disregard for the rights of pro se litigants denied him a "full and fair adjudication of his scientific habeas corpus petition pursuant to the law." Mills asks this court to cure the lack of due process that he experienced in the lower-court proceeding by granting him a change of venue by which it

8

may be assumed that Mills desires that this court transfer his habeas petition to another circuit court to make a new ruling on it.

Because there is no provision in the prevailing rules of procedure for this court to reassign Mills's habeas petition to a different circuit court that was not the trial court, the request is not consistent with procedural rules. The sole issue on appeal is whether Mills has advanced a ground in his brief on which this court should reverse the order of the trial court because the trial court's decision to deny the petition was clearly erroneous; that is, we must decide, after reviewing the entire evidence, whether this court is left with the definite and firm conviction that a mistake has been made. Mills has established no basis for this court to overturn the order.

Affirmed.

*Johnny Lee Mills*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Pamela Rumpz*, Ass't Att'y Gen., for appellee.