SLIP OPINION

Cite as 2016 Ark. 413

# SUPREME COURT OF ARKANSAS

No. CR–16–412

| | |
|---|---|
| RICKEY DALE NEWMAN<br><div align="right">PETITIONER</div> | **Opinion Delivered** December 1, 2016 |
| V. | PETITION FOR WRIT OF CERTIORARI |
| HONORABLE GARY R. COTTRELL, CRAWFORD COUNTY CIRCUIT COURT<br><div align="right">RESPONDENT</div> | HONORABLE GARY R. COTTRELL, JUDGE |
| | <u>PETITION DENIED</u>. |

**KAREN R. BAKER, Associate Justice**

On January 28, 2016, petitioner, Rickey Dale Newman filed a motion to dismiss for violation of right to speedy trial with the circuit court. On March 10, 2016, the circuit court denied the motion. Newman now seeks a writ of certiorari vacating the circuit court's order.

A procedural history of Newman's case is necessary to an understanding of Newman's petition for writ of certiorari. On June 10, 2002, Newman, was convicted in the Crawford County Circuit Court of one count of Capital Murder and sentenced to death. On January 16, 2014, we vacated Newman's conviction and sentence and remanded the case to the circuit court for a new trial on the grounds that Newman was not competent to stand trial in 2002. *Newman v. State*, 2014 Ark. 7, at 29. The mandate issued on February 5, 2014. On February 28, 2014, in response to the mandate, the circuit court issued an order suspending proceedings and committing Newman to the custody of the director of the Arkansas Department of Human Services "for detention, care, and treatment until restoration of fitness to proceed."

SLIP OPINION

Newman was transported for the assessment, but on the advice of his counsel, Newman refused to cooperate. On April 21, 2014, Dr. Mark Peacock, Ph.D., of the Arkansas State Hospital filed a report with the circuit court. In this report, Peacock stated he could not assess "the true extent of Mr. Newman's knowledge of the adjudicative process and his capacity to provide effective assistance to his attorney" but that Newman's "conversations with staff and his conduct since admission [had] not raised suspicion that his lack of cooperation with restoration or evaluation efforts is based in any substantially impairing mental disease or mental defect." Peacock further opined that Newman's refusal to cooperate with the mental examination was a "knowing and voluntary" act and "any ongoing efforts to forcibly treat or 'restore' [Newman's] adjudicative fitness [would] only serve to create a potentially unsafe or openly defiant situation" that would not serve the interests of any party.

On June 5, 2014, Newman filed a request to disqualify the prosecuting attorney and his office. On August 27, 2014, the circuit court granted the motion and appointed a special prosecutor. The circuit court rescheduled the trial for October 27, 2014; however, the special prosecutor requested a continuance. The circuit court rescheduled the trial for April 6, 2015.

On October 10, 2014, the special prosecutor filed a motion seeking a fitness examination of Newman. This motion was based on the previous judicial findings of Newman's incompetence and the content of a letter, written by Newman, without the knowledge of his counsel, and addressed to the court, in which Newman stated that he did not feel his circumstances regarding competency had changed since it was determined he was incompetent to stand trial in 2002. In the letter, Newman also maintained that he is innocent

but requested the death penalty remain an option because "'death is [his] only peace.'" On November 6, 2014, the circuit court granted the motion, and allowed a private psychiatrist not practicing with the Arkansas State Hospital, Bradley C. Diner, M.D., to examine Newman. On December 29, 2014, Newman filed a motion to disqualify the special prosecutor.

On February 26, 2015, Diner filed a report with the circuit court in which stated he was unable to fully assess Newman's fitness based on records alone but that he believed Newman's behavior was deliberate. He ultimately recommended that Newman be sent back to the Arkansas State Hospital for assessment:

> I am of the belief that Newman suffers from both mental disease and defect.
>
> I am not, however, certain that his psychiatric conditions have rendered him incompetent. Specifically, I am not of the opinion that Newman's repeated request for the death penalty is indicative of suicidal ideation or intent and that his "suicidality" impedes his ability to make rational, self-protective decisions. Rather, I believe Newman has learned to use this behavior as a way to prolong the proceedings, tie the court's hands, and ultimately prolong his life.
>
> Secondly, I am uncertain that his psychiatric condition precludes his ability to consult his attorney. . . . He has learned that his behavior confounds and complicates his case, thus prolonging action and simultaneously giving him power and control. This very behavior is indicative of understanding factually the charges against him and gives insight into his awareness of the consequences. There is even some indication that he knows he should be discussing his actions with his attorney (by virtue of stating repeatedly, "She doesn't know I'm writing this."). I believe he knows this will make it appear he cannot work with her, so he repeatedly does it.
>
> The extent to which Newman's illness and cognitive deficits manifest and interfere with his competency cannot be determined by a retroactive review of records alone. He must be examined directly, and his behavior affect, interpersonal interactive quality, and cognitive skills must be observed and analyzed. . . . Unfortunately, Newman is currently refusing to cooperate, making that direct assessment impossible.

Therefore, I would recommend he be sent back to the Arkansas State Hospital for another competency assessment.

On April 1, 2015, on the State's motion, the circuit court again entered an order committing Newman to the Arkansas State Hospital "for detention, care, and treatment until restoration of fitness to proceed." The court based its judgment on additional letters it had received from Newman requesting death and Newman's continued refusal to cooperate with the fitness evaluation. According to the court,

> there has been no meaningful evidence presented to the Court to suggest a material change in defendant's fitness, and the evidence before the court suggests there has not been. Although both defendant and his counsel insist that there has been a change and that he is competent to proceed, both have inexplicably refused to cooperate with the Court's efforts to secure an appropriate mental-health evaluation to establish that contention . . . in light of counsel's advice that her client not cooperate with an evaluation, even though counsel states that she believes he is competent, the court affords little weight to counsel's view . . . If defendant were indeed competent, as his counsel contends, he presumably would be found competent by a mental-health evaluation if one were permitted to proceed on his contention that his competence has been restored. . . . In light of the Supreme Court's recent finding that defendant was incompetent at the time of his first trial, fortified by his behavior at trial and through his more recent coram nobis proceedings, behavior not unlike that exhibited now, and in light of the fact that there is no meaningful evidence that his competence has been restored, the court concludes that defendant remains unfit for trial.

On June 25, 2015, Peacock filed a report with the circuit court in which he stated, "I believe that Mr. Newman has evidenced, more often than not, a capacity for thinking about his case in a rational manner and tends to also maintain his understandably pathological desire for death." Peacock further noted that Newman "was able to identify and interact cooperatively with his attorney" and that "Newman's letter writing is more a product of his personality pathology than acute psychopathology typically viewed as responsible for substantial impairment in one's fitness-related behavior." Peacock further opined that

Newman "is capable of rationally understanding the points being raised in his defense and of displaying lengthy and meaningful periods of appropriate and controlled behavior when faced with the facts and information pertaining to his case." Peacock concluded that Newman was not only capable of restoration but that had also achieved it. Subsequently, the special prosecutor requested a hearing on the report, and a hearing was held on September 18, 2015. Peacock testified regarding his mental evaluation of Newman. At the conclusion of the hearing, the circuit court requested a final report from Diner, which was filed on October 2, 2015. Diner opined that Newman was fit to stand trial. The court agreed with Peacock's and Diner's opinions and found Newman fit to proceed on November 4, 2015.

On January 28, 2016, Newman filed a motion to dismiss for violation of the right to a speedy trial, which the circuit court denied; Newman filed this petition for a writ of certiorari.

*Speedy Trial: Petition for Writ of Certiorari*

In the present petition for a writ of certiorari, Newman contends that we should issue a writ of certiorari vacating the order of the circuit court that denied his motion to dismiss for violation of his right to a speedy trial. Specifically, Newman contends that circuit court erred by excluding from the 12-month speedy-trial period the period between when Newman was committed for restoration on February 28, 2014, until Newman was determined competent on November 4, 2015.

"A writ of certiorari is an extraordinary writ, which 'will be granted only when there is a lack of jurisdiction, an act in excess of jurisdiction on the face of the record, or when the

proceedings are erroneous on the face of the record.'" *Smith v. Fox*, 358 Ark. 388, 395, 193 S.W.3d 238, 243 (2004) (internal citations omitted). This writ is appropriate only where it is apparent from the record that there has been a 'plain, manifest, clear, and gross abuse of discretion, and there is no other adequate remedy.'" *State v. Dawson*, 343 Ark. 683, 693, 38 S.W.3d 319, 325 (2001)(internal citations omitted). With these standards in mind, we turn to the law governing speedy trials. Arkansas Rule of Criminal Procedure 28 governs speedy-trial determinations. It requires the State to try a defendant within twelve months, excluding any periods of delay authorized by Ark. R. Crim. P. 28.3. *See* Ark. R. Crim. P. 28.1 (2002); *Miles v. State*, 348 Ark. 544, 75 S.W.3d 677 (2002). Further, Ark. R. Crim. P. 28.2(f) states that "if the defendant is to be retried following a collateral attack of a conviction, the time for trial shall commence from the date of the order invalidating the conviction."

Here, Newman's conviction was vacated on January 16, 2014. However, since the court's decision remanding the case for retrial was not effective until the mandate was issued, the time for trial commenced running on February 7, 2014. *See* Ark. Sup. Ct. R. 5-2 (2015); *Clements v. State*, 312 Ark. 528, 531, 851 S.W.2d 422, 424 (1993). Thus, the State had until February 7, 2015, to try Newman unless there were periods of delay authorized by Ark. R. Crim. P. 28.3. Pursuant to Ark. R. Crim. P. 28.3(a), the period of delay from other proceedings concerning the defendant, including but not limited to an examination and hearing on the competency of the defendant and the period during which he is incompetent to stand trial shall be excluded in computing the time for trial.

In this case, Newman was evaluated for competency multiple times, due in large part

to his refusal to cooperate with the assessments. However, Newman asserts that under this court's ruling in *Davis v. State*, 375 Ark. 368 291 S.W.3d 164 (2009), only the time between the date the circuit court ordered the mental evaluation and the date that the corresponding report was filed is excusable. Thus, Newman argues the maximum excludable time totaled 249 days. This calculation represents 52 days between February 28, 2014, and April 21, 2014; 112 days between November 6, 2014, and February 26, 2015; and 85 days between April 1, 2015, and June 25, 2015. Furthermore, Newman argues that, "if every one of those days is excluded from the speedy trial calculation, the combined effect is to extend the end of the speedy trial period from January 16, 2015, to September 22, 2015." Therefore, Newman asserts, the circuit court erred in denying his motion to dismiss on January 28, 2016.

The State responds that Newman's argument disregards the portion of Ark. R. Crim. P. 28.3(a) concerning the exclusion of any period during which a defendant is incompetent to stand trial. The State concedes that when Newman filed his motion to dismiss on January 28, 2016, 720 days had elapsed from the issuance of this court's mandate, thus establishing a prima facie case that a speedy trail violation had occurred. However, the State further responds that any delay was either caused by Newman or was justifiably excluded under Ark. R. Crim. P. 28.3. The State contends that, based on the record before us, it is clear that Newman was never ruled fit to stand trial from the time this court found him unfit to proceed at his 2002 capital-murder trial until the circuit court found Newman fit to proceed, on November 4, 2015. Thus, the state contends that the circuit court had no authority or jurisdiction to resume proceedings against Newman until it determined he was fit to proceed.

In *State v. Thomas*, 2014 Ark. 362, 439 S.W.3d 690, we addressed whether a circuit court has jurisdiction to restart a criminal proceeding before a defendant has been found competent to stand trial. In *Thomas*, we determined that under Ark. Code Ann. § 5-2-310 (c)(1), "it is only after the circuit court has found that a defendant has 'regained fitness' that criminal proceedings may be resumed." *Id.* at 6 (citing *Mauppin v. State*, 309 Ark. 235, 831 S.W.2d 104 (1992)). In this case, the circuit court was unable to determine that Newman was fit to proceed until November 4, 2015, primarily because Newman refused to submit to an evaluation. Thus, although Peacock and Diner both reported that Newman was competent, neither could definitively say that he was competent to proceed until he proceeded with the mental evaluation. As a result, the circuit court could not find him fit to proceed, and pursuant to the holding in *Thomas*, the circuit court could not resume criminal proceedings. Because, the period during when Newman was not competent to stand trial is excludable for purposes of calculating speedy-trial, we hold that the circuit court did not err in denying Newman's motion to dismiss.

Accordingly, we find no error on the face of the record, and Newman has not met the requirements for issuance of a writ of certiorari.

Petition denied.

*Julie Brain*, for petitioner.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.